UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEW JERSEY
**Caption in compliance with D.N.J. LBR 9004-2(c)**

**McELROY, DEUTSCH, MULVANEY, &
CARPENTER, LLP**

Three Gateway Center
100 Mulberry Street
Newark, New Jersey 07102
Aaron S. Applebaum, Esq.
Barry D. Kleban (admitted *pro hac vice*)
Telephone:  (302) 300-4515
Facsimile:   (302) 654-4031
E-Mail:   aapplebaum@mdmc-law.com
*Attorneys for Debtor*

| | |
|---|---|
| In re:<br><br>BERGENFIELD SENIOR HOUSING, LLC,<br><br>                    Debtor. | Case No.: 13-19703-MS<br><br>Chapter 11<br><br>Judge:  Morris Stern, U.S.B.J. |

**THIS IS NOT A SOLICITATION OF ACCEPTANCES OF A CHAPTER 11 PLAN FOR
BERGENFIELD SENIOR HOUSING, LLC. ACCEPTANCES OR REJECTIONS OF
ANY SUCH PLAN MAY NOT BE SOLICITED UNTIL A DISCLOSURE STATEMENT
HAS BEEN APPROVED BY THE UNITED STATES BANKRUPTCY COURT FOR THE
DISTRICT OF NEW JERSEY. THIS DISCLOSURE STATEMENT IS BEING
SUBMITTED FOR APPROVAL, BUT HAS NOT YET BEEN APPROVED BY THE
BANKRUPTCY COURT. THE INFORMATION CONTAINED HEREIN IS SUBJECT
TO COMPLETION OR AMENDMENT.**

**DISCLOSURE STATEMENT FOR PLAN OF LIQUIDATION PURSUANT
TO CHAPTER 11 OF THE BANKRUPTCY CODE PROPOSED BY THE DEBTOR**

**McElroy Deutsch Mulvaney & Carpenter, LLP**
Barry D. Kleban, Esq.
Aaron S. Applebaum, Esq.
1617 John F. Kennedy Blvd.
Suite 1500
Philadelphia, PA 19103
Phone: (215) 557-2900
Facsimile: (215) 557-2990

*Counsel for the Debtor and Debtor in Possession*

# TABLE OF CONTENTS

I. INTRODUCTION ................................................................................................................. 1
   A.    Overview ..................................................................................................................... 1
   B.    Qualification Concerning Summaries Contained in this Disclosure Statement ...... 2
   C.    Source of Information Contained in this Disclosure Statement ............................... 2
   D.    Reliance on Disclosure Statement ............................................................................ 2
   E.    No Duty to Update ..................................................................................................... 3
   F.    Representations and Inducements Not Included in this Disclosure Statement ........... 3
   G.    Authorization of Information Contained in this Disclosure Statement ...................... 3
   H.    Legal or Tax Advice .................................................................................................. 3
   I.    Forward-Looking Statements .................................................................................... 3
II. THE PLAN VOTING INSTRUCTIONS AND PROCEDURES ..................................... 4
   A.    Notice to Holders of Claims and Equity Interests .................................................... 4
   B.    Who is Entitled to Vote .............................................................................................. 5
   C.    Solicitation Package ................................................................................................... 5
   D.    Voting Procedures, Ballots and Voting Deadline ..................................................... 5
   E.    Confirmation Hearing and Deadline for Objections to Confirmation ..................... 6
III. OVERVIEW OF THE PLAN ............................................................................................ 7
IV. HISTORY OF THE DEBTOR AND COMMENCEMENT OF THE CASE ................. 8
   A.    Overview of Prepetition Operations .......................................................................... 8
   B.    Capital Structure ........................................................................................................ 9
   C.    Events Leading to Chapter 11 Filing ........................................................................ 9
V. THE CHAPTER 11 CASE ................................................................................................ 10
   A.    Continuation of Business; Stay of Litigation and Enforcement
       of Creditors' Rights .................................................................................................. 10
   B.    Parties In Interest and Advisors .............................................................................. 10
   C.    First Day Orders ...................................................................................................... 11
   D.    Exclusivity ............................................................................................................... 11
   E.    Claims Process and Bar Date .................................................................................. 12
   F.    Estimated Value of Debtor's Assets ....................................................................... 12
VI. SUMMARY OF THE PLAN ........................................................................................... 13
   A.    Introduction ............................................................................................................. 13
   B.    Overall Structure of The Plan ................................................................................. 14
   C.    Classification and Treatment of Claims and Equity Interests under the Plan ...... 14
   D.    Means for Implementation of the Plan .................................................................... 19
   E.    Acceptance or Rejection of the Plan ....................................................................... 22
   F.    Teatment of Executory Contracts and Unexpired Leases ....................................... 23
   G.    Provisions Governing Distributions ........................................................................ 23
   H.    Procedures for Resolving Disputed Claims ............................................................ 26
   I.    Conditions Precedent to Confirmation and Effective Date of the Plan ................. 28
   J.    Settlement, Release, Injunction and Related Provisions ........................................ 29
VII. CERTAIN FACTORS TO BE CONSIDERED ........................................................... 32
   A.    Financial Information; Disclaimer .......................................................................... 32
   B.    Failure to Confirm Plan .......................................................................................... 33

i

C.      **Conconsensual Confirmation** ...................................................................... 33
D.      **Delays of Confirmation or Effective Date** ................................................. 33
E.      **Certain Bankruptcy Considerations** ......................................................... 33
F.      **Certain Tax Considerations** ........................................................................ 33
G.      **The Debtor Has No Duty to Update** .......................................................... 34
H.      **No Representations Outside This Disclosure Statement Are Authorized** ............. 34
I.      **Claims Could Be More Than Projected, Assets Could Be Less Than Projected** ... 34
J.      **No Legal Or Tax Advice Is Provided To You By This Disclosure Statement** ........ 34
VIII.   **PROCESS OF VOTING AND CONFIRMATION** ....................................... 34
A.      **Statutory Requirements for Confirmation of the Plan** ............................ 34
B.      **Best Interests of Creditors Test** .................................................................. 35
C.      **Plan Feasibility** ............................................................................................ 36
D.      **Section 1129(b): Unfair Discrimination and the "Fair and Equitable" Test** ........ 36
IX.     **ALTERNATIVES TO CONFIRMATION AND CONSUMMATION**
        **OF THE PLAN** ............................................................................................... 38
A.      **Liquidation Under Chapter 7** ..................................................................... 38
B.      **Alternative Plan of Reorganization** ........................................................... 38

## DISCLAIMER

THE INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT IS INCLUDED HEREIN FOR PURPOSES OF SOLICITING ACCEPTANCES OF THE PLAN AND MAY NOT BE RELIED UPON FOR ANY PURPOSE OTHER THAN TO DETERMINE HOW TO VOTE ON THE PLAN. NO PERSON MAY GIVE ANY INFORMATION OR MAKE ANY REPRESENTATIONS OTHER THAN THE INFORMATION AND REPRESENTATIONS CONTAINED IN THIS DISCLOSURE STATEMENT REGARDING THE PLAN OR THE SOLICITATION OF ACCEPTANCES OF THE PLAN.

ALL CREDITORS AND HOLDERS OF EQUITY INTERESTS SHOULD READ THIS DISCLOSURE STATEMENT AND ALL EXHIBITS HERETO, INCLUDING THE PLAN, BEFORE VOTING TO ACCEPT OR REJECT THE PLAN. PLAN SUMMARIES AND STATEMENTS MADE IN THIS DISCLOSURE STATEMENT ARE QUALIFIED IN THEIR ENTIRETY BY REFERENCE TO THE PLAN AND THE EXHIBITS ANNEXED TO THE DISCLOSURE STATEMENT AND THE PLAN. THE STATEMENTS CONTAINED IN THIS DISCLOSURE STATEMENT ARE MADE ONLY AS OF THE DATE HEREOF UNLESS ANOTHER TIME IS SPECIFIED HEREIN. THE TRANSMISSION OF THIS DISCLOSURE STATEMENT SHALL NOT CREATE AN IMPLICATION THAT THERE HAS BEEN NO CHANGE IN THE INFORMATION STATED SINCE THE DATE HEREOF. AFTER THE DATE HEREOF, THERE CAN BE NO ASSURANCE THAT (A) THE INFORMATION AND REPRESENTATIONS CONTAINED HEREIN WILL BE MATERIALLY ACCURATE, AND (B) THIS DISCLOSURE STATEMENT CONTAINS ALL MATERIAL INFORMATION.

THIS DISCLOSURE STATEMENT HAS BEEN PREPARED IN ACCORDANCE WITH SECTION 1125 OF THE BANKRUPTCY CODE AND RULE 3016 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE, AND NOT NECESSARILY IN ACCORDANCE WITH FEDERAL OR STATE SECURITIES LAWS OR OTHER NON-BANKRUPTCY LAW. THIS DISCLOSURE STATEMENT WAS PREPARED TO PROVIDE HOLDERS OF CLAIMS AGAINST AND EQUITY INTERESTS IN THE DEBTOR WITH "*ADEQUATE INFORMATION*" (AS DEFINED IN THE BANKRUPTCY CODE) SO THAT THEY CAN MAKE AN INFORMED JUDGMENT ABOUT THE PLAN.

THIS DISCLOSURE STATEMENT SHALL NOT CONSTITUTE OR BE CONSTRUED AS AN ADMISSION OF ANY FACT OR LIABILITY, AS A STIPULATION OR AS A WAIVER, BUT, RATHER, AS A STATEMENT MADE IN SETTLEMENT NEGOTIATIONS. THIS DISCLOSURE STATEMENT SHALL NOT BE ADMISSIBLE IN ANY NON-BANKRUPTCY PROCEEDING INVOLVING THE DEBTOR OR ANY OTHER PARTY, NOR SHALL IT BE CONSTRUED TO BE CONCLUSIVE ADVICE ON THE TAX, SECURITIES, OR OTHER LEGAL EFFECTS OF THE LIQUIDATION OR THE PLAN ON HOLDERS OF CLAIMS AGAINST, OR EQUITY INTERESTS IN, THE DEBTOR.

# I.

# INTRODUCTION

## A.    Overview

On May 2, 2013 Bergenfield Senior Housing, LLC filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code with the United States Bankruptcy Court for the District of New Jersey.  The Debtor is operating its business as a debtor in possession.

This Disclosure Statement is submitted pursuant to section 1125 of the Bankruptcy Code for the solicitation of votes on the Plan filed on August 30, 2013. The Plan is attached to this Disclosure Statement as **Exhibit A**.

This Disclosure Statement describes certain aspects of the Plan, the Debtor's operations, history and significant events that occurred during the Debtor's chapter 11 case, the process relating to confirmation of the Plan by the Bankruptcy Court, and related matters. This introduction is intended solely as a summary of the Plan and is qualified in its entirety by the Plan and the other portions of this Disclosure Statement. If there is any inconsistency between the Plan (including the exhibits and schedules attached thereto and any supplements to the Plan) and the descriptions in the Disclosure Statement, the terms of the Plan (and the exhibits and schedules attached thereto and any supplements to the Plan) will control.

**Capitalized terms used in this Disclosure Statement and not otherwise defined herein have the meanings ascribed to them in the Plan.**

For a description of the Plan as it relates to Holders of Claims against and Equity Interests in the Debtor, please see Article VI of this Disclosure Statement (*"Summary of the Plan"*).

**FOR A COMPLETE UNDERSTANDING OF THE PLAN, YOU SHOULD READ THIS DISCLOSURE STATEMENT, THE PLAN, AND THE EXHIBITS THERETO IN THEIR ENTIRETY**.

This Disclosure Statement, the Plan and any documents attached or referred to in the Disclosure Statement and the Plan are the only materials that Creditors should use to determine whether to vote to accept or reject the Plan. A Ballot for accepting or rejecting the Plan is being submitted to Holders of Claims that the Debtor believes are entitled to vote to accept or reject the Plan.  As indicated below, the Debtor believes that Holders of Claims in Classes 2, 3, 4, 5, 6, 7 and 8 are entitled to vote to accept or reject the Plan.

---

**The last day to vote to accept or reject the Plan is _____. To be counted, your Ballot must <u>actually be received</u> by the Debtor by the "Voting Deadline": _____ at 5:00 p.m. (prevailing Eastern Time). Any Ballots received after the Voting Deadline will not be counted. Claimants must return their Ballots to the Debtor in accordance with the Voting Instructions that accompany the Ballots.**

**_____ is the "<u>Voting Record Date</u>," which is the date on which the identity of <u>Holders of Claims against the Debtor will be determined for the purpose of establishing an</u> entitlement, if any, to receive certain notices and vote on the Plan.**

---

By the Disclosure Statement Approval Order dated _____ [Docket No. ___], the Bankruptcy Court approved this Disclosure Statement for dissemination to Holders of Claims against the Debtor.

**Approval of this Disclosure Statement by the Bankruptcy Court does not indicate that the Bankruptcy Court recommends either acceptance or rejection of the Plan, nor does such approval constitute a determination by the Bankruptcy Court as to the fairness or merits of the Plan.**

**The Debtor strongly urges Holders of Claims In Classes 2, 3, 4, 5, 6, 7 and 8 to vote to <u>accept</u> the Plan by completing and returning their Ballots so that they will be received on or before the Voting Deadline: _____, 2013, at 5:00 p.m., prevailing Eastern Time.**

**B.        Qualification Concerning Summaries Contained in this Disclosure Statement**

This Disclosure Statement contains summaries of certain provisions of the Plan, certain statutory provisions, certain documents related to the Plan, certain events in the chapter 11 case, and certain financial information. Although the Debtor believes that the summaries of the Plan and related document summaries contained herein are fair and accurate, such summaries are qualified to the extent that they do not set forth the entire text of such documents, statutory provisions or financial information. All of the exhibits to the Plan and this Disclosure Statement and other pleadings and orders relating to the Debtor's chapter 11 case are available for inspection during regular business hours (9:00 a.m. to 4:00 p.m. weekdays, except legal holidays) at the Office of the Clerk of the Court, United States Bankruptcy Court for the District of New Jersey, 50 Walnut Street, Newark, New Jersey, or online at www.njb.uscourts.gov. A PACER password is required to access case information, which can be obtained at www.pacer.psc.uscourts.gov, or by calling 1-800-676-6856.

**C.        Source of Information Contained in this Disclosure Statement**

Factual information contained in this Disclosure Statement has been provided from various sources, including (1) the Debtor's books and records, (2) the Debtor's counsel, its professionals and management and (3) pleadings filed with the Bankruptcy Court. The Debtor does not to warrant or represent that the information contained herein, including the financial information, is without any inaccuracy or omission.

**D.        Reliance on Disclosure Statement**

This Disclosure Statement may not be relied on for any purpose other than to determine whether to vote to accept or reject the Plan, and nothing stated herein shall constitute an admission of any fact or liability by any party, or be admissible in any proceeding involving the Debtor or any other party other than proceedings to approve this Disclosure Statement and confirm the Plan, or be deemed evidence of the tax or other legal effects of the Plan on any Debtor or Holders of Claims or Equity Interests. Holders of Claims entitled to vote should read this Disclosure Statement and the Plan carefully and in their entirety and may wish to consult with an attorney or other qualified advisor prior to voting on the Plan.

**E.      No Duty to Update**

The statements contained in this Disclosure Statement are made by the Debtor as of the date hereof, unless otherwise specified herein, and the delivery of this Disclosure Statement after that date does not imply that there has been no change in the information set forth herein since that date. The Debtor has no duty to update this Disclosure Statement unless otherwise ordered to do so by the Bankruptcy Court.

**F.      Representations and Inducements Not Included in this Disclosure Statement**

No representations concerning or related to the Debtor, the Debtor's chapter 11 case, or the Plan are authorized by the Bankruptcy Court or the Bankruptcy Code, other than as set forth in this Disclosure Statement. You should not rely on any representations or inducements made to secure your acceptance or rejection of the Plan not contained in this Disclosure Statement.

**G.      Authorization of Information Contained in this Disclosure Statement**

For the purposes of this Disclosure Statement and the confirmation of the Plan, no representations or other statements concerning the Debtor, the Debtor's chapter 11 case, or the Plan, including, but not limited to, representations and statements regarding asset valuation, are authorized by the Debtor, other than those expressly set forth in this Disclosure Statement.

**H.       Legal or Tax Advice**

The contents of this Disclosure Statement should <u>not</u> be construed as legal, business or tax advice. Each Creditor or Equity Holder should consult his, her, or its own legal counsel and accountant as to legal, tax and other matters concerning his, her, or its Claim or Interest.

This Disclosure Statement is <u>not</u> legal advice to you. This Disclosure Statement may <u>not</u> be relied upon for any purpose other than to determine how to vote on the Plan or object to confirmation of the Plan.

**I.      Forward-Looking Statements**

This Disclosure Statement contains forward-looking statements with respect to the Plan. Forward-looking statements include:

- descriptions of plans and litigation;
- projections of income tax and other contingent liabilities, and other financial items; and
- any descriptions of assumptions underlying or relating to any of the foregoing.

Forward-looking statements discuss matters that are not historical facts. Because they discuss future events or conditions, forward-looking statements often include words such as "anticipate," "believe," "estimate," "expect," "intend," "plan," "project," "target," "can," "could," "may," "should," "will," "would" or similar expressions. Forward-looking statements should not be unduly relied upon. They indicate the Debtor's expectations about the future and are not guarantees. Forward-looking statements speak only as of the date they are made and the Debtor has no obligation to update them to reflect changes that occur after the date they are made. There are several factors, many beyond the Debtor's control, which could cause results to differ significantly

from expectations. For examples of such factors refer to Article VII of this Disclosure Statement, "*Certain Factors to be Considered.*"

## II.

## THE PLAN VOTING INSTRUCTIONS AND PROCEDURES

**A.      Notice to Holders of Claims and Equity Interests**

This Disclosure Statement is being transmitted to Holders of certain Claims against and Equity Interests in the Debtor. The primary purpose of this Disclosure Statement is to provide those parties voting on the Plan with adequate information to make a reasonably informed decision with respect to the Plan before voting to accept or to reject the Plan.  A discussion and listing of those Holders of Claims that are or are not entitled to vote to accept or reject the Plan are provided herein.

On _____, the Bankruptcy Court entered the Disclosure Statement Approval Order approving this Disclosure Statement, finding that it contains information of a kind and in sufficient detail to enable the Holders of Claims against and Equity Interests in the Debtor that are entitled to vote to make an informed judgment about the Plan. THE BANKRUPTCY COURT'S APPROVAL OF THIS DISCLOSURE STATEMENT CONSTITUTES NEITHER A GUARANTY OF THE ACCURACY OR COMPLETENESS OF THE INFORMATION CONTAINED HEREIN, NOR AN ENDORSEMENT OF THE PLAN BY THE BANKRUPTCY COURT.

IF CONFIRMED BY THE BANKRUPTCY COURT, THE PLAN WILL BIND ALL HOLDERS OF CLAIMS AGAINST AND EQUITY INTERESTS IN THE DEBTOR, WHETHER OR NOT THEY ARE ENTITLED TO VOTE OR DID VOTE ON THE PLAN AND WHETHER OR NOT THEY RECEIVE OR RETAIN ANY DISTRIBUTIONS OR PROPERTY UNDER THE PLAN. THUS, YOU ARE ENCOURAGED TO READ THIS DISCLOSURE STATEMENT CAREFULLY. IN PARTICULAR, HOLDERS OF IMPAIRED CLAIMS WHO ARE ENTITLED TO VOTE ON THE PLAN ARE ENCOURAGED TO READ THIS DISCLOSURE STATEMENT AND ANY EXHIBITS HERETO, THE PLAN, AND ANY EXHIBITS TO THE PLAN CAREFULLY AND IN THEIR ENTIRETY BEFORE VOTING TO ACCEPT OR TO REJECT THE PLAN.

THIS DISCLOSURE STATEMENT AND THE OTHER MATERIALS INCLUDED IN THE SOLICITATION PACKAGE ARE THE ONLY DOCUMENTS AUTHORIZED BY THE BANKRUPTCY COURT TO BE USED IN CONNECTION WITH THE SOLICITATION OF VOTES ON THE PLAN. NO SOLICITATION OF VOTES MAY BE MADE EXCEPT AFTER DISTRIBUTION OF THE SOLICITATION PACKAGE, AND NO PERSON HAS BEEN AUTHORIZED TO DISTRUBTE INFORMATION CONCERNING THE DEBTOR OR THE PLAN OTHER THAN THE INFORMATION CONTAINED HEREIN.

CERTAIN OF THE INFORMATION CONTAINED IN THIS DISCLOSURE STATEMENT IS BY ITS NATURE FORWARD LOOKING OR CONTAINS OR MAY CONTAIN ESTIMATES, ASSUMPTIONS AND PROJECTIONS THAT MAY BE MATERIALLY DIFFERENT FROM ACTUAL FUTURE RESULTS.

Except as otherwise specifically and expressly stated herein, this Disclosure Statement does not reflect any events that may occur after the date hereof and that may have a material impact on the information contained in this Disclosure Statement. Further, the Debtor does not

anticipate that any amendments or supplements to this Disclosure Statement will be distributed to reflect such occurrences. Accordingly, the delivery of this Disclosure Statement shall not under any circumstance imply that the information herein is correct or complete as of any time after the date hereof.

## B.      Who is Entitled to Vote

Only Holders of Claims in Classes that are "impaired" under the Plan are entitled to vote to accept or reject the Plan.  Generally, a Claim is impaired if the holder's legal, equitable, or contractual rights are changed under such plan.  As indicated below, the Plan divides all Claims and Interests into nine (9) Classes.  Of these Classes, Class 2 (Secured Claim of Boiling Springs Savings Bank), Class 3 (Secured Claim of Gene Rotonda), Class 4 (Secured Claim of Nicholas Rotonda), Class 5 (Secured Claim of Rosemarie Hebner), Class 6 (Secured Claim of Nicholas and Rosemarie Rotonda), Class 7 (Secured Claim of Nicholas and Rosemarie Rotonda), and Class 8 (General Unsecured Claims) are impaired.  Holders of Claims in Classes 2 through 8 are therefore entitled to vote to accept or reject the Plan.  Holders of Claims in Class 1 (priority non-tax claims) are unimpaired, are deemed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code, and are therefore not entitled to vote on the Plan.  Holders of Interests in Class 9 (Equity Interests) will receive no distribution or retain any property under the Plan and are thus deemed not to have accepted the plan however, Holders of Class 9 Interests shall be permitted to vote on the Plan pursuant to the provisions of Article __ of the Plan.

## C.      Solicitation Package

In addition to approving this Disclosure Statement, the Bankruptcy Court approved certain voting procedures, scheduled the Confirmation Hearing at which the Bankruptcy Court will consider confirmation of the Plan, and approved the form of the Confirmation Hearing Notice. Accompanying this Disclosure Statement are copies of (1) the Plan (**Exhibit A**); (2) the Confirmation Hearing Notice, which provides notice of, among other things, the time for submitting Ballots to accept or reject the Plan, the date, time and place of the hearing to consider confirmation of the Plan and related matters, and the time for filing objections to confirmation of the Plan; and (3) for Creditors whose Claims are classified in an Impaired Class, one or more Ballots (and return envelopes) to be used in voting to accept or to reject the Plan. If you did not receive a Ballot and believe that you should have, please contact the Debtor, or its counsel.

## D.      Voting Procedures, Ballots and Voting Deadline

If you are entitled to vote to accept or reject the Plan, a Ballot is enclosed for the purpose of voting on the Plan. After carefully reviewing the Plan, this Disclosure Statement, and the detailed instructions accompanying your Ballot, please (1) indicate your acceptance or rejection of the Plan by checking the appropriate boxes and providing requested information on the enclosed Ballot and (2) complete and sign your **original** Ballot (copies will not be accepted) and return it in the envelope provided to the Debtor at the address below so that it is *RECEIVED* by the Voting Deadline (as defined below).

FOR YOUR VOTE TO BE COUNTED, YOUR BALLOT MUST BE PROPERLY COMPLETED AS SET FORTH ABOVE AND IN ACCORDANCE WITH THE VOTING INSTRUCTIONS ACCOMPANYING THE BALLOT AND *RECEIVED* NO LATER THAN THE VOTING DEADLINE, _____, AT 5:00 P.M., PREVAILING EASTERN TIME, BY THE Debtor, at the following address:

Via Regular Mail, Overnight Mail or Hand Delivery:

McElroy, Deutsch, Mulvaney & Carpenter, LLP
300 Delaware Avenue, Suite 770
Wilmington, DE 19801
Attn:  Susan B. Mullen, Case Administrator

Any Ballot that is executed and returned but does not indicate an acceptance or rejection of the Plan will not be counted.

**<u>DO NOT</u> RETURN ANY DEBT OR EQUITY INSTRUMENTS WITH YOUR BALLOT.**

If you have any questions about the procedure for voting your Impaired Claim or with respect to the packet of materials that you have received, please contact the Debtor's Counsel, Aaron S. Applebaum, Esquire, at (302) 300-4515 or via email at aapplebaum@mdmc-law.com.

If you wish to obtain, at your own expense (unless otherwise specifically required by Bankruptcy Rule 3017(d)), an additional copy of the Plan, this Disclosure Statement, or any exhibits to such documents, please contact the Debtor's Counsel.

**E.     Confirmation Hearing and Deadline for Objections to Confirmation**

The Bankruptcy Court has scheduled the Confirmation Hearing for _____, at _____ **(prevailing Eastern Time),** or as soon thereafter as counsel may be heard, before the Honorable Morris Stern, United States Bankruptcy Judge, in the United States Bankruptcy Court, Martin Luther King, Jr. Federal Building, Courtroom 3A 50 Walnut Street, Newark, NJ 07102. The Confirmation Hearing may be adjourned from time to time by the Bankruptcy Court without further notice except for the announcement of the adjournment date made at the Confirmation Hearing or at any subsequent adjourned Confirmation Hearing.

The Bankruptcy Court has directed that objections, if any, to confirmation of the Plan must be filed with the Clerk of the Bankruptcy Court, in accordance with the electronic filing requirements as set forth online at www.njb.uscourts.gov, and served so that they are *ACTUALLY RECEIVED* **on or before** _____, **2013 at 5:00 p.m. (prevailing Eastern Time) by:**

*Counsel for the Debtor*

**McElroy, Deutsch, Mulvaney & Carpenter, LLP**
1617 John F. Kennedy Blvd., Suite 1500
Philadelphia, PA 19103
Attn: Barry D. Kleban, Esquire
Aaron S. Applebaum, Esquire

*United States Trustee*

**Office of the United States Trustee for the District of New Jersey**

Attn: Peter J. D'Auria, Esquire
One Newark Center
Suite 2100
Newark, NJ 07102

# III.

## OVERVIEW OF THE PLAN

The purpose of the Plan is to liquidate, collect and maximize the Cash value of the assets of the Debtor and make distributions in respect of any Allowed Claims against the Debtor's Estate. The Plan is premised on the satisfaction of Claims through distribution of the proceeds raised from the sale and liquidation of the Debtor's assets, claims and causes of action.

Pursuant to the Plan, the Debtor will pay all Allowed Priority Claims and Administrative Expense Claims that have not previously been paid. Holders of Claims shall receive the treatment set forth in the Plan for each such Holder.

The following table divides the Claims against and Equity Interests in the Debtor into nine (9) separate Classes and summarizes the treatment for each Class under the Plan. The table also identifies which Classes are entitled to vote on the Plan based on the Bankruptcy Code. The table indicates an estimated recovery for each Class, expressed as a percentage of the estimated, aggregate Allowed Claims in such Class. Certain unclassified Claims, including Administrative Claims and Priority Tax Claims will be paid in full in Cash to the extent such Claims are Allowed Claims. The recoveries described in the following table represent the Debtor's best estimates based on the information available at this time, and certain significant assumptions described throughout this Disclosure Statement.

| Summary of Classification and Treatment of Classified Claims and Equity Interests[1] | | | | | |
|---|---|---|---|---|---|
| Class | Claim | Status | Voting Rights | Estimated Amount of Allowed Claims | Estimated Recovery |
| 1 | Priority Non-Tax Claims | Unimpaired | Deemed to Accept | $0 | 100% |
| 2 | Secured Claim –Boiling Springs Savings Bank | Impaired | Entitled to Vote | $12,565,593[2] | |
| 3 | Secured Claim – Gene Rotonda | Unimpaired | Entitled to Vote | $1,000,000 | Unknown |
| 4 | Secured Claim – Nicholas Rotonda | Unimpaired | Entitled to Vote | $1,000,000 | Unknown |
| 5 | Secured Claim – Rosemarie Hebner | Impaired | Entitled to Vote | $1,000,000 | Unknown |
| 6 | Secured Claim – Nicholas and Rosemarie Rotonda | Impaired | Entitled to Vote | $1,500,000 | Unknown |
| 7 | Secured Claim – Nicholas and Rosemarie Rotonda | Impaired | Entitled to Vote | $600,000 | Unknown |
| 8 | General Unsecured Claims | Impaired | Entitled to Vote | $1,923,190[3] | Unknown |
| 9 | Equity Interests | Impaired | Deemed to Reject | n/a | $0 |

---

[1] For further explanation and description of the amounts set forth herein, please see the Liquidation Analysis, attached hereto as Exhibit B.

[2] Amount pursuant to proof of claim filed by BSSB. Actual amount to be distributed will be determined by agreement and/or court order.

[3] Includes $1.86 million based on proof of claim filed by SM Global, which will be the subject of objection.

ALTHOUGH THE DEBTOR BELIEVES FROM ITS REVIEW OF THE CLAIMS THAT ITS ESTIMATION OF CLAIMS AND RECOVERIES IS REASONABLE, THERE IS NO ASSURANCE THAT THE ACTUAL AMOUNT OF ALLOWED CLAIMS IN EACH CLASS WILL NOT MATERIALLY EXCEED THE ESTIMATED AGGREGATE AMOUNTS SHOWN HEREIN. THE DEBTOR IS CONTINUING ITS INVESTIGATION OF THE CLAIMS AND HAS NOT MADE A FINAL DETERMINATION OF ALL THE CLAIMS THAT MAY BE OBJECTED TO, AS SUCH DETERMINATION MAY BE MADE BY THE DEBTOR. THE ACTUAL RECOVERIES UNDER THE PLAN WILL BE DEPENDENT UPON A VARIETY OF FACTORS INCLUDING, BUT NOT LIMITED TO, WHETHER, AND IN WHAT AMOUNT, CONTINGENT CLAIMS, IF ANY, AGAINST THE DEBTOR BECOME NON-CONTINGENT AND FIXED AND WHETHER, AND TO WHAT EXTENT DISPUTED CLAIMS, IF ANY, ARE RESOLVED IN FAVOR OF THE ESTATE RATHER THAN THE CLAIMANT(S). ACCORDINGLY, NO REPRESENTATION CAN BE OR IS BEING MADE WITH RESPECT TO WHETHER EACH ESTIMATED RECOVERY SHOWN IN THE TABLE ABOVE WILL BE REALIZED BY THE HOLDER OF AN ALLOWED CLAIM IN ANY PARTICULAR CLASS.

## IV.

## HISTORY OF THE DEBTOR AND COMMENCEMENT OF THE CASE

### A.    Overview of Prepetition Operations

#### 1.    Debtor's Business

The Debtor operates a 90-unit residential apartment building located at 47 Legion Drive in Bergenfield New Jersey, which property is wholly owned by the Debtor. The Debtor's primary secured creditor is Boiling Springs Savings Bank.  The Debtor is indebted to BSSB on account of two promissory notes, both of which are secured by mortgages on the Property.   The Mortgages are believed by the Debtor to be properly perfected first- and second-priority mortgages on the Property.

Substantially all of the Debtor's cash is derived from the collection of Rents from the Property, and is therefore either the collateral of Boiling Springs or, as Boiling Springs asserts (and as agreed to by the Debtor), owned by Boiling Springs and available for the Debtor's use only pursuant to a license contained in an assignment of leases and rents in favor of Boiling Springs. The Debtor has also granted certain mortgages on the Property to the Debtor's principal, Nicholas Rotonda, and members of his family, Rosemarie Rotonda, Nicholas C. Rotonda, Gene N. Rotonda and Rosemarie Hebner.  The Debtor believes that any interest in the Debtor's cash collateral which may exist as a result of such mortgages is subject and subordinate to BSSB's interests in the Rents.

## B.    Capital Structure

### 1.    Equity

The Debtor is a New Jersey limited liability company.  Its membership interests are held jointly by the Debtor's principal, Nicholas Rotonda, and his wife, Rosemarie Rotonda.

### 2.    Debt

#### a.    Boiling Springs Savings Bank Pre-Petition Secured Loans

As set forth in the first-day affidavit executed by the Debtor's principal, Boiling Springs' first-priority mortgage secures indebtedness as of the Petition Date in the total amount of $12,021,560.54.  Boiling Springs' second-priority mortgage secures indebtedness as of the Petition Date in the total amount of $574,891.49.

In addition to its mortgages, BSSB is secured by all income derived from the Property, including, most notably, all rents from tenants (the "Rents").  Indeed, BSSB asserts, and the Debtor has agreed in the Rents Orders, that BSSB is the owner of all of the Rents pursuant to its absolute assignment.

#### b.    Rotonda Family Mortgages

The Debtor has also granted mortgages to certain members of the family of the Debtor's principal, Nicholas Rotonda.  Specifically, the Debtor granted mortgages in the following amounts, and in the following order or priority (based on date of recordation): Gene Rotonda, $1,000,000; Nicholas Rotonda (the son the Debtor's principal), $1,000,000; Rosemarie Hebner, $1,000,000; Nicholas and Rosemarie Rotonda (the Debtor's managing members) $1,500,000; and Nicholas and Rosemarie Rotonda (the Debtor's managing members) $600,000.  The Debtor does not believe that Gene Rotonda, Nicholas Rotonda (the principal's son) or Rosemarie Hebner extended loans or other value to the Debtor in exchange for their mortgages.

#### c.    General Unsecured Debt

Other than the judgment claim of SM Global, discussed below, the Debtor's unsecured debt is comprised primarily of debt to trade vendors and suppliers related to the ordinary business operations of the Debtor.  The Debtor estimates that the total amount of general unsecured debt, excluding the judgment of claim of SM Global, is approximately $63,190.

## C.    Events Leading to Chapter 11 Filing

The Debtor's need to seek protection under chapter 11 of the Bankruptcy Code resulted primarily from litigation between the Debtor and SM Global.  Prior to the Petition Date, a judgment was entered against the Debtor in favor of SM Global, arising from an alleged breach of a purchase agreement with respect to the Property in favor of SM Global as prospective purchaser.  Such judgment was in the approximate amount of $1.86 million (the "SM Global Judgment").  The SM Global Judgment was entered within 90-days of the Petition Date.  To the

extent it is deemed, by operation of state law or otherwise, to constitute a lien on the Property, the Debtor asserts that such lien is entirely avoidable pursuant to section 547 of the Bankruptcy Code.   Immediately following the commencement of this Bankruptcy Case, the Debtor commenced an adversary proceeding against SM Global to avoid any lien created by the SM Global Judgment (the "Adversary Proceeding").   SM Global has defaulted with respect to the Adversary Proceeding, and the Debtor is seeking the entry of a consent judgment, with the cooperation of SM Global's bankruptcy counsel, providing for, inter alia, the avoidance of any lien held by SM Global on account of the SM Global Judgment.

In addition, SM Global had commenced execution on the SM Global Judgment, and had levied upon the Debtor's bank accounts.  Those accounts are in Bank of America and BSSB.   In connection with the Adversary Proceeding, as part of its "First-Day Motions," the Debtor also obtained entry of a temporary restraining order (the "TRO") providing for the immediate turnover of such funds to the Debtor's estate.   The return of all seized funds is also being addressed through the consent judgment.

## V.

## THE CHAPTER 11 CASE

### A.    Continuation of Business; Stay of Litigation and Enforcement of Creditors' Rights

Since the Petition Date, the Debtor has continued to operate as debtor in possession subject to the supervision of the Bankruptcy Court. Although the Debtor is authorized to operate in the ordinary course of business, transactions out of the ordinary course of business have required Bankruptcy Court approval.

An immediate effect of the Debtor filing its voluntary chapter 11 petition was the imposition of the automatic stay under the Bankruptcy Code, which, with limited exceptions, enjoins the commencement or continuation of all collection efforts by Creditors, the enforcement of liens against property of the Debtor and the continuation of litigation against the Debtor. The automatic stay of an act against property of the Debtor's Estate remains in effect, unless modified by the Bankruptcy Court, until such property no longer is property of the Debtor's Estate; the stay of all other acts encompassed by the automatic stay continues until the earlier of the time the Debtor's chapter 11 case is closed or dismissed.

### B.    Parties In Interest and Advisors

Described below are the primary parties that have played significant roles in the Debtor's chapter 11 case to date.

#### 1.    The Bankruptcy Court

The Debtor's chapter 11 case was filed in the United States Bankruptcy Court for the District of New Jersey, located in Newark, New Jersey. The Honorable Morris Stern, United States Bankruptcy Judge, is presiding over the Debtor's chapter 11 case.

2.        **Advisors to the Debtor**

The Debtor has retained McElroy, Deutsch, Mulvaney & Carpenter, LLP as bankruptcy counsel for the Debtor's chapter 11 case. In addition, the Debtor is in the process of retaining GE Keen Realty Advisors LLC as broker for the marketing and sale of the Property.  The Debtor also anticipates retaining certain other professionals, including an accountant for tax consultation, and possibly special counsel to address certain discrete litigation needs.

C.      **First Day Orders**

The Bankruptcy Court entered certain "first day orders" granting the Debtor's various forms of relief to stabilize the business, including:

- *Order Authorizing the Debtor to Maintain Existing Bank Accounts and Business Forms [Docket No. 21]*
- *Interim and Final Order Providing for Adequate Assurance of Payment for Future Utility Services and Restraining Utilities from Discontinuing, Altering or Refusing Service pursuant to 11 U.S.C. §§ 105(a) and 366 [Docket Nos. 22 and 39]*
- *Order (A) Authorizing the Debtor to Pay Pre-Petition Wages and Salaries and (B) Directing Banks to Honor Pre-Petition Checks for Payment of Pre-Petition Personnel Obligations [Docket No. 23]*
- *Interim Order (A) Authorizing the Debtor, with the Consent and License of Boiling Springs Savings Bank, to Use Rents of Existing Secured Creditors and Granting Adequate Protection for Use and (B) Proscribing Form and Manner of Notice and Setting Final Hearing [Docket No. 24][4]*

D.      **Exclusivity**

The Bankruptcy Code grants a debtor an initial period of 120 days after the commencement of a chapter 11 case during which the debtor has the exclusive right to propose and to file a plan of reorganization. If a debtor proposes and files a plan within this initial 120-day exclusivity period, then the debtor has until the end of the period ending on the 180th day after the commencement of a chapter 11 case to solicit and to obtain acceptances of such plan. These exclusive periods may be extended for a limited period of time by an order of the court.

The Debtor filed its petition for relief under chapter 11 of the Bankruptcy Code on the Petition Date, May 2, 2013. Accordingly, the exclusive period to file a plan ended on August 30, 2013.  As the Debtor filed the Plan on August 30, 2013, the last day for the Debtor's exclusive right to solicit acceptances to the Plan is October 29, 2013.

---

[4] Additionally, the Bankruptcy Court has, from time to time, entered further interim orders extending the Debtor's authorization to use rents, with the consent and license of BSSB.  See, Docket Nos. 38 and 65.

E.    **Claims Process and Bar Date**

1.    **Schedules and Statements**

On May 16, 2013, the Debtor filed with the Bankruptcy Court a statement of financial affairs, and schedules of assets, liabilities and executory contracts and unexpired leases (collectively, the "Schedules").

2.    **Bar Dates and Objections to Proofs of Claim**

The Bankruptcy Court set September 3, 2013 as the deadline for filing proofs of claim in the Debtor's bankruptcy case. The Bankruptcy Court has directed that requests for payment of Administrative Claims, including 503(b)(9) Claims, be filed within thirty (30) days after entry of the Disclosure Statement Approval Order.

The Debtor has filed or anticipates filing objections to filed Claims that the Debtor believes are not entitled to be Allowed Claims, including any asserted 503(b)(9) Claims, Priority Non-Tax Claims, or Claims that assert amounts significantly in excess of amounts recorded in the Debtor's books and records.

3.    **Preparation of Claims Estimates and Recoveries**

The Debtor has prepared its estimates of Claims and recoveries by Holders of such Claims based primarily on the following: (a) projections based on anticipated future Claim reconciliations and Claim objections, and (b) other legal and factual analyses unique to particular types of Claims.

The Debtor's estimates of Allowed Claims are identified in the chart set forth in Article III (*"Overview of the Plan"*) above and form the basis of projected recoveries of the various Classes of Claims. Notwithstanding the Debtor's efforts in developing its Claims estimates, the preparation of such estimates is inherently uncertain, and, accordingly, there is no assurance that such estimates accurately will predict the actual amount of Allowed Claims in the Debtor's chapter 11 case. As a result, the actual amount of Allowed Claims may differ materially from the Debtor's Claims estimates contained herein.

F.    **Estimated Value of Debtor's Assets**

After receiving input from its advisors, the Debtor has performed a preliminary analysis of the value of its assets. This analysis assumes certain results from the sale of the Debtor's Property.  In addition, the Debtor has estimated the value of its remaining assets, including, specifically, possible litigation claims.

The Debtor estimates that the range of value for the Property is $13.5 million to $15 million. This valuation is for informational purposes only. The Debtor has not yet attempted to ascertain the value of its other assets, which consist of possible litigation claims discussed elsewhere in this Disclosure Statement.  The valuation is only an estimate of the range of values for the Debtor's assets and is not a guarantee that (1) any particular value within the valuation range ultimately will be realized or (2) a value that is higher or lower than the valuation range will not be realized.

The Debtor's assets include potential Causes of Action which, if successfully prosecuted, will result in additional funds available for distribution to creditors. These Causes of Action include claims against SM Global, and a potential malpractice claim against Scott Piekarsky, the Debtor's former attorney in connection with the pre-petition disputes with SM Global. The Debtor has not yet initiated these Causes of Action, and is not at this time able to estimate with any degree of certainty the potential value of these Causes of Action or their likelihood of success. Additionally, upon review of the payments made by the Debtor preceding the filing of the Bankruptcy Case, the Debtor does not believe that there exist any significant Chapter 5 Causes of Action (generally in the nature of preferences or fraudulent conveyances) which, taking into account costs of litigation and likelihood of success, would be worth pursuing for the benefit of creditors.

## VI.

## SUMMARY OF THE PLAN

### A.    Introduction

This Article provides a summary of the terms and provisions of the Plan, including the classification and treatment of Claims and Equity Interests under the Plan and the means for implementation of the Plan. The summary is qualified in its entirety by reference to the Plan, which is attached to this Disclosure Statement as **Exhibit A.** The statements contained in this Disclosure Statement include summaries of the provisions contained in the Plan and in documents referred to therein. The statements contained in this Disclosure Statement do not purport to be precise or complete statements of all the terms of the Plan or the documents referred to therein; reference is made to the Plan and to such documents for the full and complete statements of such terms.

The Plan itself and the documents referred to therein control the actual treatment of Claims against and Equity Interests in the Debtor under the Plan and will, upon the Effective Date, be binding upon all Holders of Claims against and Equity Interests in the Debtor, its Estate and other parties in interest.

After careful review of the estimated recoveries in a chapter 11 reorganization scenario and a chapter 7 liquidation scenario, the Debtor has concluded that the recoveries to Creditors will be maximized by consummating and making distributions pursuant to the Plan. The Debtor believes that its Estate has value that would not be fully realized by Creditors in a chapter 7 liquidation primarily due to: (1) the additional administrative expenses that would be incurred in a chapter 7 liquidation; (2) the transfer taxes which would be incurred in a chapter 7 liquidation and not under chapter 11; (3) a "fire sale" of the Debtor's Property, which would not allow full value to be realized on such assets as would be realized under the Plan; and (4) the additional delay in distributions that would occur if the Debtor's chapter 11 case was converted to a case under chapter 7.

Accordingly, the Debtor believes that the Estate is worth more to its stakeholders if the Debtor's liquidation is completed as described above, and distributions are made, under chapter 11 pursuant to the Plan.

**B.      Overall Structure of The Plan**

The Plan provides for the liquidation of the Debtor's Property following marketing, solicitation of bids, and, if multiple bids are received, an auction and then sale to the highest bidder.  Creditors will receive distributions from the proceeds of the Sale as provided in the Plan. The Plan further provides for the distribution of the proceeds of Causes of Action, if any.

The Classes of Claims against and Equity Interests in the Debtor created under the Plan, the treatment of those Classes under the Plan, the means for implementation of the Plan and the Distributions to be made under the Plan are described in more detail below.

**C.      Classification and Treatment of Claims and Equity Interests under the Plan**

**1.      Classification Generally**

Under the Plan, Claims against and Equity Interests in the Debtor are divided into different Classes. Classification of Claims and Equity Interests in the Plan are for all purposes, including voting, confirmation and distribution pursuant to the Plan.

A Claim or Equity Interest shall be deemed classified in a particular Class only to the extent that the Claim or Equity Interest qualifies within the description of that Class and shall be deemed classified in a different Class only to the extent that any portion of such Claim or Equity Interest qualifies within the description of such different Class. A Claim or Equity Interest is placed in a particular Class only to the extent that such Claim or Equity Interest is Allowed in that Class and has not been paid, released or otherwise settled prior to the Effective Date. Notwithstanding any Distribution provided for in the Plan, no Distribution on account of any Claim is required or permitted unless and until such Claim becomes an Allowed Claim, which might not occur, if at all, until after the Effective Date.

**2.      Unclassified Claims Under the Plan**

**a.      Administrative Claims**

On, or as soon as reasonably practicable after (i) the Initial Distribution Date, if such Administrative Claim is an Allowed Administrative Claim as of the Effective Date or (ii) the date on which such Administrative Claim becomes an Allowed Administrative Claim or as otherwise determined by the Debtor, each Holder (other than a Professional) of an Allowed Administrative Claim shall receive, in full settlement, satisfaction and release of, and in exchange for, such Allowed Administrative Claim, (a) Cash in an amount equal to the unpaid amount of such Allowed Administrative Claim or (b) such other, less favorable treatment as may be agreed upon in writing by such Holder and the Debtor, as applicable; provided, however, that the Debtor shall be authorized to pay Allowed Administrative Claims that arise in the ordinary course of the Debtor's business, in full, in the ordinary course of business in accordance with the terms and subject to the conditions of any agreements governing, instruments evidencing, or other documents relating to, such transactions, post-confirmation.  All requests for allowance of Administrative Claims must be made, other than for Professional fees, by written motion no later than the Administrative Claim Bar Date.  Administrative Claims not paid as of the Effective Date will be paid from the Administrative Claims Reserve.

14

Any Holder of a 503(b)(9) Claim that did not timely file a 503(b)(9) Claim by the Administrative Claim Bar Date shall be forever barred from asserting such 503(b)(9) Claim against the Debtor, its Estate, its successors or its property, and such Administrative Claim shall be deemed discharged and released as of the Effective Date.   Further, the Debtor reserves the right to file objections to any asserted 503(b)(9) Claims, and to request that the Bankruptcy Court enter orders disallowing and expunging, or, in certain instances, reducing such asserted 503(b)(9) Claims.  Asserted 503(b)(9) Claims Filed, but not objected to as of the Initial Distribution Date, or which were objected to and reduced but not expunged, shall be deemed Allowed Administrative Claims in full or as reduced, respectively.

Any further request for allowance of an Administrative Claim in this case must be made, other than for a Professional, by written motion by the Administrative Claim Bar Date.  Any Objections to such a request must be Filed and served on the requesting party prior to the Initial Distribution Date. Unless the Debtor or another party in interest objects to a request for payment of an Administrative Claim within such time period, such Administrative Claim shall be deemed Allowed in the amount requested. In the event that the Debtor or another party in interest objects to a request for payment of an Administrative Claim, the Bankruptcy Court shall determine the Allowed amount of such Administrative Claim.

### b.    Professional Fees

Notwithstanding any other provision of the Plan concerning Administrative Claims, any Professional seeking an award by the Bankruptcy Court of an Allowed Administrative Claim on account of Professional Fees incurred from the Petition Date through and including the Effective Date (i) shall, no later than forty-five (45) days after the Effective Date, File a final application for allowance of compensation for services rendered and reimbursement of expenses incurred through and including the Effective Date and (ii) shall receive, as soon as reasonably practicable after such claim is Allowed, in full settlement, satisfaction and release of, and in exchange for, such Allowed Administrative Claim, Cash in an amount equal to the unpaid amount of such Allowed Administrative Claim in accordance with the Order relating to or allowing any such Administrative Claim.

Any Professional providing services on behalf of the Estate after the Effective Date may submit invoices to the Debtor for compensation for services rendered and reimbursement of expenses provided after the Effective Date. The Debtor may pay such Professionals, without further application or Order of the Bankruptcy Court, Cash in an amount equal to the unpaid amount of such post-Effective Date invoices to the extent the Debtor agrees that the services thus provided were for the benefit of the Estate and that the amounts requested in such invoices are reasonable. In the event the Debtor disagrees with any such post-Effective Date request for payment by a Professional, and the Debtor and the requesting Professional are unable to resolve such dispute consensually, the invoice shall be submitted to the Bankruptcy Court for a final determination as to its Allowance.

Allowed Professional Fees shall be paid from the Professional Fee Carve-Outs, and, in the event the Professional Fee Carve-Outs are insufficient to pay all Allowed Professional Fees, any unpaid amounts may be paid from the Administrative Claims Reserve.

### c.    Priority Tax Claims

On, or as soon as reasonably practicable after (i) the Initial Distribution Date, if such Priority Tax Claim is an Allowed Priority Tax Claim as of the Effective Date or (ii) the date on which such Priority Tax Claim becomes an Allowed Priority Tax Claim, each Holder of an Allowed Priority Tax Claim against the Debtor shall receive, (1) Cash in an amount equal to the amount of such Allowed Priority Tax Claim, or (2) Cash in an amount agreed to by such Holder and agreed to and paid by the Debtor, provided that such parties may further agree for the payment of such Allowed Priority Tax Claim to occur at a later date without any further notice to or action, order, or approval of the Bankruptcy Court.

The Debtor believes that there are no Priority Tax Claims in this Case, and therefore that no money will be distributed on account of such Claims.

### 3.    Classification Under the Plan

Class 1 – Priority Non-Tax Claims

(a)    Classification: Class 1 consists of Priority Non-Tax Claims.

(b)    Treatment: On or as soon as practicable after the Effective Date, each Holder of an Allowed Priority Non-Tax Claim shall receive, in full and final satisfaction of such Claim, one of the following treatments, in the sole discretion of the Debtor: (a) full payment in Cash of its Allowed Priority Non-Tax Claim or (b) treatment of its Allowed Priority Non-Tax Claim in a manner that leaves such Claim Unimpaired.

(c)    Voting: Class 1 is Unimpaired and Holders of Priority Non-Tax Claims are conclusively deemed to have accepted the Plan.

Class 2 – Secured Claim of Boiling Springs Savings Bank ("BSSB")

(a)    Classification: Class 2 consists of the Secured Claim of BSSB.

(b)    Treatment:  On the later of the Closing Date or the date on which its Claim becomes Allowed, whether pursuant to stipulation or Court order, BSSB shall receive, in full and final satisfaction of its Allowed Secured Claim, the total amount of its Allowed Secured Claim, which amount shall be the sum of the then-unpaid principal balance plus interest calculated at the rate of 3% per annum, plus BSSB's reasonable costs and professional fees, but excluding any claim for early payment in the nature of pre-payment penalties or otherwise, and further excluding any interest in excess of 3% per annum.

(c)    Payment of the above amount shall be deemed to fully satisfy BSSB's Allowed Secured Claim, and BSSB shall waive any claims in excess of this amount and shall not participate as the Holder of a Class 8 Claim.

(d)    Voting: Class 2 is Impaired and the Holder of the Class 2 Claim is entitled to vote to accept or reject the Plan.

Class 3 – Secured Claim of Gene Rotonda

(a)    Classification: Class 3 consists of the Secured Claim of Gene Rotonda, noted on the Debtor's Schedule D in the amount of $1,000,000.

(b)      Treatment: To the extent that the Secured Claim of Gene Rotonda is an Allowed Claim, on the Initial Distribution Date the Holder of the Claim in Class 3 will receive cash in the full Allowed Amount of its Secured Claim from the proceeds of the Sale, after payment and/or adequate reservation for all Unclassified Claims and Claims in Classes 1 and 2.

(c)      Payment of the above amount shall be deemed to fully satisfy the Allowed Secured Claim of Gene Rotonda.

(d)      Voting: Class 3 is Impaired and the Holder of the Class 3 Claim is entitled to vote to accept or reject the Plan.

<u>Class 4 – Secured Claim of Nicholas Rotonda</u>

(a)      Classification: Class 4 consists of the Secured Claim of Nicholas Rotonda, son of the Debtor's principal, Nicholas Rotonda, noted on the Debtor's Schedule D in the amount of $1,000,000.

(b)      Treatment: To the extent that the Secured Claim of Nicholas Rotonda is an Allowed Claim, on the Initial Distribution Date the Holder of the Claim in Class 4 will receive cash in the full Allowed Amount of its Secured Claim from the proceeds of the Sale, after payment and/or adequate reservation for all Unclassified Claims and Claims in Classes 1 through 3.

(c)      Payment of the above amount shall be deemed to fully satisfy the Allowed Secured Claim of Nicholas Rotonda.

(d)      Voting: Class 4 is Impaired and the Holder of the Class 4 Claim is entitled to vote to accept or reject the Plan.

<u>Class 5– Secured Claim of Rosemarie Hebner</u>

(a)      Classification: Class 5 consists of the Secured Claim of Rosemarie Hebner, noted on the Debtor's Schedule D in the amount of $1,000,000.

(b)      Treatment: To the extent that the Secured Claim of Rosemarie Hebner is an Allowed Claim, on the Initial Distribution Date the Holder of the Claim in Class 5 will receive cash in the full Allowed Amount of its Secured Claim from the proceeds of the Sale, after payment and/or adequate reservation for all Unclassified Claims and Claims in Classes 1 through 4.

(c)      Payment of the above amount shall be deemed to fully satisfy the Allowed Secured Claim of Rosemarie Hebner.

(d)      Voting: Class 5 is Impaired and the Holder of the Class 5 Claim is entitled to vote to accept or reject the Plan.

<u>Class 6 – Secured Claim of Nicholas and Rosemarie Rotonda</u>

(a)      Classification: Class 6 consists of the Secured Claim of Nicholas and Rosemarie Rotonda, noted on the Debtor's Schedule D in the amount of $1,500,000.

(b)      Treatment: To the extent that the Secured Claim of Nicholas and Rosemarie Rotonda is an Allowed Claim, on the Initial Distribution Date the Holders of the Claim in Class 6 will receive cash in the full Allowed Amount of their Secured Claim from the

proceeds of the Sale, after payment and/or adequate reservation for all Unclassified Claims and Claims in Classes 1 through 5.

(c)    Payment of the above amount shall be deemed to fully satisfy the Allowed Secured Claim of Nicholas and Rosemarie Rotonda.

(d)    Voting: Class 6 is Impaired and the Holders of the Class 6 Claim are entitled to vote to accept or reject the Plan.

<u>Class 7 – Secured Claim of Nicholas and Rosemarie Rotonda</u>

(a)    Classification: Class 7 consists of the Secured Claim of Nicholas and Rosemarie Rotonda, noted on the Debtor's Schedule D in the amount of $600,000.

(b)    Treatment: To the extent that the Secured Claim of Nicholas and Rosemarie Rotonda is an Allowed Claim, on the Initial Distribution Date the Holders of the Claim in Class 7 will receive cash in the full Allowed Amount of their Secured Claim from the proceeds of the Sale, after payment and/or adequate reservation for all Unclassified Claims and Claims in Classes 1 through 6.

(c)    Payment of the above amount shall be deemed to fully satisfy the Allowed Secured Claim of Nicholas and Rosemarie Rotonda.

(d)    Voting: Class 7 is Impaired and the Holders of the Class 6 Claim are entitled to vote to accept or reject the Plan.

<u>Class 8 – General Unsecured Claims</u>

(a)    Classification: Class 8 consists of General Unsecured Claims.

(b)    Treatment: Each Holder of an Allowed General Unsecured Claim shall receive, in full and final satisfaction of such Claim, (a) its Pro Rata Share of the proceeds of the Sale , after payment and/or adequate reservation for all Unclassified Claims and Claims in Classes 1 through 7, and (b) its Pro Rata Share of the proceeds of the liquidation of any further assets of the Debtor, including Causes of Action, after payment and/or adequate reservation for all Unclassified Claims.

(c)    Payment of the above amounts shall be deemed to fully satisfy General Unsecured Creditors with respect to all claims against the Debtor.

(d)    Voting: Class 8 is Impaired, and Holders of General Unsecured Claims are entitled to vote to accept or reject the Plan.

<u>Class 9 – Equity Interests</u>

(a)    Classification: Class 9 consists of Equity Interests.

(b)    Treatment: Holders of Equity Interests shall neither receive nor retain any property under the Plan. All Equity Interests shall be cancelled and of no further force or effect and all proofs of interest filed on account of Equity Interests shall be deemed disallowed by operation of the Plan.

(c)    Voting: Class 9 is Impaired and Holders of Equity Interests are deemed not to have accepted the Plan, unless they vote to accept the plan, notwithstanding such deemed non-acceptance.

18

**D.      Means for Implementation of the Plan**

**1.      Funding of the Plan**

The Debtor is marketing the Property pursuant to the Bid Procedures Motion.  The Debtor intends to sell the Property to the highest bidder resulting from the process approved by the Bankruptcy Court in the Bid Procedures Motion.  The Sale of Property to such highest bidder is specifically contemplated and approved through this Plan and the Confirmation Order, and is the primary mechanism for funding payments under the Plan.  The payments provided for in this Plan will be made to Creditors by the Debtor from the Sale Proceeds and/or the Net Effective Date Cash and/or proceeds from the liquidation of other assets of the Debtor, including, without limitation, Causes of Action.

**2.      Vesting of Assets and Dissolution**

On the Effective Date, the Debtor's assets shall vest in the Debtor, free and clear of all Claims, Equity Interests, liens, charges or other encumbrances, except as set forth in this Plan. After one hundred eighty (180) days after the Effective Date, or such other date as may be ordered by the Bankruptcy Court the Debtor is authorized, without the need for any further action or formality which might otherwise be required under applicable non-bankruptcy laws, to dissolve the Debtor.

On the Effective Date or as soon as practicable thereafter, the Debtor shall consummate, pursuant to section 1123(a)(5)(D) of the Bankruptcy Code, those transactions and sales of property, if any, authorized herein.

On the Effective Date, any provision in any operating agreements, limited liability company agreements or any other organizational document (as the same may be amended or restated from time to time) of the Debtor requiring dissolution, liquidation, or withdrawal of a member upon insolvency, bankruptcy or the filing of Bankruptcy Case:

(a)      is deemed waived and of no further force and effect and

(b)      any action taken to prevent or revoke such potential dissolution or liquidation by the Debtor or potential withdrawal of the Debtor from the applicable limited liability company or partnership is ratified and deemed effective to prevent such dissolution or liquidation and the Debtor shall continue its existence regardless of any such provision.

**3.      Reservation of Rights Regarding Causes of Action**

The Debtor reserves the right to pursue any and all Causes of Action, and the right to administer, settle, litigate, enforce and liquidate, consistent with the terms and conditions of the Plan, such Causes of Action.  The Debtor specifically reserves and preserves any and all Causes of Action which it has or may have against SM Global Group LLC and Piekarsky & Associates, LLC as more fully described herein.

Unless Causes of Action against a Person or Entity are expressly waived, relinquished, released, compromised or settled in the Plan, or any Final Order, the Debtor  expressly reserves all Causes of Action for later adjudication and therefore, no preclusion doctrine or other rule of law, including, without limitation, the doctrines of *res judicata*, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable or otherwise) or *laches*, shall apply to

19

such Causes of Action upon, after, or as a result of the confirmation or Effective Date of the Plan, or the Confirmation Order. In addition, the Debtor expressly reserves the right to pursue or adopt any Causes of Action not so waived, relinquished, released, compromised or settled that are alleged in any lawsuit in which the Debtor is a defendant or an interested party, against any Person or Entity, including, without limitation, the plaintiffs and co-defendants in such lawsuits.

### 4.    Distributions

Rights and Powers of the Debtor

(a)    The Debtor shall have all the rights and powers of a trustee under sections 704 and 1106 of the Bankruptcy Code and Rule 2004 of the Bankruptcy Rules, including without limitation, the right to (i) effect all actions and execute all agreements, instruments and other documents necessary to implement the provisions of the Plan; (ii) prosecute, settle, abandon or compromise any Claims; (iii) make Distributions contemplated by the Plan; (iv) establish and administer any necessary reserves for disputed Claims that may be required; (v) object to disputed Claims and prosecute, settle, compromise, withdraw or resolve in any manner approved by the Bankruptcy Court such objections; (vi) employ and compensate professionals (including professionals previously retained by the Debtor); and (vii) file all federal, state and local tax returns if necessary.

Unsecured Creditor Distributions

(a)    Initial Distributions. On the Initial Distribution Date, the Debtor shall make Distributions required to be made under the Plan to Holders of Allowed Unsecured Claims, and shall make adequate reserves for any disputed Claims.

(b)    Final Distributions. The Debtor's estate shall be dissolved and its affairs wound up and the Debtor shall make the Final Distributions, upon the earlier of (i) the date which is two (2) years after the Effective Date, and (ii) that date when, (A) in the reasonable judgment of the Debtor, substantially all of the assets of the Debtor have been liquidated and there are no substantial potential sources of additional assets for Distribution; and (B) there remain no substantial disputed Claims. Notwithstanding the foregoing, on or prior to a date not less than six (6) months prior to such termination, the Bankruptcy Court, upon motion by a party in interest, may extend the term for the Debtor to make distributions for one or more finite terms based upon the particular facts and circumstances at that time, if an extension is necessary to the liquidating purpose of the Plan. The date on which the final Distributions are made is referred to as the "**Plan Termination Date**". On the Plan Termination Date, the Debtor shall:

(i)    distribute all Cash held by the Debtor to in accordance with the Plan; and

promptly thereafter, request the Bankruptcy Court enter an order closing the Bankruptcy Case (unless this has already been done).  For the avoidance of doubt, nothing herein shall be construed to prevent the Debtor from closing the Bankruptcy Case if in the Debtor's reasonable judgment no further matters are required to be presented to or adjudicated by the Bankruptcy Court.

**5.      Directors/Officers/Equity Interests/Professionals of the Debtor on the Effective Date**

The authority, power and incumbency of the Persons then acting as directors and officers of the Debtor shall continue until the Plan Termination Date, at which point such authority, power and incumbency shall be terminated and such directors and officers shall be deemed to have resigned.

On the Effective Date, all the Equity Interests in the Debtor (including all instruments evidencing such Equity Interests) shall be canceled and extinguished without further action under any applicable agreement, law, regulation or rule.

On the Effective Date, the Professionals for the Debtor shall be deemed to have completed their services and have no further obligations to render service unless they are retained by the Debtor upon such terms as shall be agreed upon by the Debtor and the Professionals, which terms must be acceptable to each in its sole discretion, but they shall be able to file a final application for a reasonable compensation and reimbursement of expenses through the Effective Date as permitted by this Plan, compensation for which may be included in such final application as an estimate.

**6.      Operations of the Debtor between the Confirmation Date and the Effective Date, and Following the Effective Date**

During the period from the Confirmation Date to and until the Effective Date, the Debtor shall continue as debtor in possession, subject to the oversight of the Bankruptcy Court as provided in the Bankruptcy Code, the Bankruptcy Rules, and all orders of the Bankruptcy Court that are then in full force and effect.  If the Effective Date does not occur by last day for the Debtor to use rents pursuant to the Rents Order, the Debtor may continue to operate its business until the Closing Date, solely with the consent of BSSB, pursuant to a budget which must be acceptable BSSB in its sole discretion, without further order of the Bankruptcy Court.

**7.      Term of Injunctions or Stays**

Unless otherwise provided, all injunctions or stays provided for in the Bankruptcy Case pursuant to sections 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Bankruptcy Case is closed.

**8.      Company Action**

The entry of the Confirmation Order shall constitute the approval of the authorization for the Debtor to take or cause to be taken all company actions necessary or appropriate to implement all provisions of, and to consummate, the Plan and any documents contemplated to be executed therewith, prior to, on and after the Effective Date, and all such actions taken or caused to be taken shall be deemed to have been authorized and approved by the Bankruptcy Court without further approval, act or action under any applicable law, order rule or regulation.

**9.      Authorization of Plan-Related Documentation**

All documents, agreements and instruments entered into and delivered on or as of the Effective Date contemplated by or in furtherance of the Plan shall become, and shall remain, effective and binding in accordance with their respective terms and conditions upon the parties thereto, in each case without further notice to or order of the Bankruptcy Court, act or action

21

under applicable law, regulation, order or rule or the vote, consent, authorization or approval of any Person (other than as expressly required by such applicable agreement).

A responsible officer, director or member of the Debtor shall be authorized to execute, deliver, file, or record such contracts, instruments, releases, indentures, and other agreements or documents, and take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

### 10.    Exclusivity Period.

Subject to further order of the Bankruptcy Court, the Proponent shall retain the exclusive right to amend the Plan and solicit acceptances thereof through and including the Effective Date.

### 11.    Exemption from Certain Fees and Taxes.

Pursuant to section 1146(a) of the Bankruptcy Code, any transfers of property, including the Property, pursuant to this Plan shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, real estate transfer tax, mansion tax, mortgage recording tax or other similar tax or governmental assessment in the United States, and the Confirmation Order shall direct the appropriate state or local governmental officials or agents to forego the collection of any such tax or governmental assessment and to accept for filing and recordation instruments or other documents pursuant to such transfers of property, including the Property, without the payment of any such tax or governmental assessment.


### E.    Acceptance or Rejection of the Plan

#### 1.    Voting Classes

Holders of Claims in each Impaired Class of Claims are entitled to vote as a class to accept or reject the Plan. Each Holder of an Allowed Class 2 Claim, Allowed Class 3 Claim, Allowed Class 4 Claim, Allowed Class 5 Claim, Allowed Class 6 Claim, Allowed Class 7 Claim, or an Allowed Class 8 Claim shall be entitled to vote to accept or reject the Plan.  Class 9 is deemed not to have accepted the Plan because the Holders of Class 9 Equity Interests will receive of retain no property on account of their Equity Interests, subject to the provisions of Article III.B.9 of the Plan.

#### 2.    Acceptance by Impaired Classes

An Impaired Class of Claims shall be deemed to have accepted the Plan if (a) Holders (other than any Holder designated under section 1126(e) of the Bankruptcy Code) of at least two-thirds in amount of the Allowed Claims actually voting in such Class have voted to accept the Plan and (b) the Holders (other than any Holder designated under Section 1126(e) of the Bankruptcy Code) of more than one-half in number of the Allowed Claims actually voting in such Class have voted to accept the Plan.

#### 3.    Presumed Acceptance of the Plan

Class 1 is Unimpaired under the Plan, and, therefore, Holders of Class 1 Claims are presumed to have accepted the Plan pursuant to Section 1126(f) of the Bankruptcy Code.

### 4.      Non-Consensual Confirmation

To the extent that any Impaired Class rejects the Plan or is deemed to have rejected the Plan (and does not vote to accept the Plan as provided in Article III.B.9 of the Plan), the Proponent will request confirmation of the Plan under Section 1129(b) of the Bankruptcy Code. The Proponent reserves the right to alter, amend, modify, revoke or withdraw this Plan or any documents related thereto, including to amend it to satisfy the requirements of Section 1129(b) of the Bankruptcy Code, if necessary.

## F.      Treatment of Executory Contracts and Unexpired Leases

### 1.      Rejection of Executory Contracts and Unexpired Leases; Treatment of Tenant Security Deposits

Any executory contract or unexpired lease which has not expired by its own terms on or prior to the Effective Date, which has not been assumed, assumed and assigned, or rejected with the approval of the Bankruptcy Court, or which the Debtor has obtained the authority to reject but has not rejected as of the Effective Date, or which is not the subject of a motion to assume the same pending as of the Effective Date, shall be deemed rejected by the Debtor on the Effective Date, and the entry of the Confirmation Order by the Bankruptcy Court shall constitute approval of such rejection pursuant to sections 365(e) and 1123(b)(2) of the Bankruptcy Code. For avoidance of doubt, any executory contract or unexpired lease being assumed and assigned in connection with the Sale of the Property shall not be deemed rejected.

From and after the Closing Date, the purchaser of the Property shall have sole responsibility for the maintenance and refund of Tenant Security Deposits.  No tenant shall have any claim against the Debtor, its Estate or Assets in connection with or arising out of their Tenant Security Deposits and any claims for refunds of all or any part thereof.

### 2.      Rejection Damages Claims

Proofs of all Claims arising out of the rejection of an executory contract or an unexpired lease pursuant to the Plan shall be filed with the Bankruptcy Court and served upon the Debtor, through its attorneys, not later than thirty (30) days after notice of the occurrence of the Effective Date has been served. Any such Claims covered by the preceding sentence not filed within such time shall be forever barred from assertion against the Debtor's estate, and its respective properties and interests.

## G.      Provisions Governing Distributions

### 1.      Manner of Payment under the Plan

At the option of the Debtor, any Cash payment to be made hereunder may be made by a check or wire transfer or as otherwise required or provided in applicable agreements. Cash payments made pursuant to this Plan in the form of checks issued by the Debtor shall be null and void if not cashed within 90 days of the date of the issuance thereof. Requests for reissuance of any check shall be made directly and subject to the sound discretion of the Debtor.

2.      **Timing of Distributions**

Except as otherwise provided herein or as may be ordered by the Bankruptcy Court, Distributions to be made on account of Claims that are Allowed Claims as of the Effective Date and that are entitled to receive Distributions under the Plan shall be made on the Initial Distribution Date. If any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date. Distributions on account of Claims that become Allowed after the Effective Date shall be made pursuant to Article VIII.D of the Plan.  The Allowed Secured Claim of BSSB shall be paid on the date provided for in Article III.B.2.b of the Plan.

3.      **Distributions by Debtor**

a.      The Debtor shall serve as Disbursing Agent on behalf of the Estate (on and after the Effective Date) under the Plan and shall make all Distributions required under the Plan.  The Debtor shall make all Plan Payments.

b.      The Disbursing Agent shall be empowered to (a) effect all actions and execute all agreements, instruments, and other documents necessary to perform its duties under the Plan, (b) make all distributions contemplated hereby, (c) employ professionals to represent it with respect to its responsibilities, and (d) exercise such other powers as may be vested in the Disbursing Agent by order of the Bankruptcy Court, pursuant to the Plan or as deemed by the Disbursing Agent to be necessary and proper to implement the provisions hereof.

c.      Except as otherwise ordered by the Bankruptcy Court, any reasonable fees and expenses incurred by the Disbursing Agent (including taxes and reasonable attorneys' fees and expenses) on or after the Effective Date shall be paid in Cash by the Debtor.

4.      **Delivery of Distributions and Undeliverable or Unclaimed Distributions**

Except as otherwise provided in the Plan, subject to Bankruptcy Rule 9010, all distributions to any Holder of an Allowed Claim shall be made at the address of such Holder as set forth on the Schedules filed with the Bankruptcy Court or on the books and records of the Debtor or its agents, as applicable, unless the Debtor has been notified in writing of a change of address, including, without limitation, by the filing of a Proof of Claim by such Holder that contains an address for such Holder different from the address reflected on the Schedules. In the event that any Distribution to any Holder is returned as undeliverable, the Debtor shall use commercially reasonable efforts to determine the current address of such Holder, but no Distribution to such Holder shall be made unless and until the Debtor has determined the then-current address of such Holder, at which time such distribution shall be made to such Holder without interest; provided that such Distributions shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code upon the expiration of 90-days from the date such Distribution was returned undeliverable. After such date, all unclaimed property or interest in property shall revert to the Debtor for distribution on account of other Allowed Claims, and the

24

Claim of the Holder originally entitled such unclaimed property or interest in property shall be discharged and forever barred.

5.    **Record Date for Distributions**

As of the close of business on the Distribution Record Date, the transfer register for any Claims or Equity Interests, for the purposes of Distributions shall be closed, and there shall be no further changes in the record Holders of any Claims or Equity Interests. The Debtor shall have no duty to recognize the transfer of, or the sale of any interest in, any Claims or Equity Interests occurring after the close of business on the Distribution Record Date and shall be entitled for all purposes relating to this Plan to recognize, distribute to and deal with only those record Holders of Claims or Equity Interests stated on the transfer books and records as maintained by the Debtor or its agents, as the case may be, as of the close of business on the Distribution Record Date.

6.    **Allocation of Plan Distributions between Principal and Interest**

To the extent that any Allowed Claim entitled to a Distribution under the Plan is comprised of indebtedness and accrued but unpaid interest thereon, such Distribution shall, for federal income tax purposes, be allocated to the principal amount of the Claim first and then, to the extent the Distribution exceeds the principal amount of the Claim, to the portion of such Claim representing accrued but unpaid interest.

7.    **Fractional Dollars; De Minimis Distributions**

Notwithstanding any other provision of the Plan to the contrary, (a) the Disbursing Agent shall not be required to make Distributions or payments of fractions of dollars, and whenever any Distribution of a fraction of a dollar under the Plan would otherwise be required, the actual Distribution made shall reflect a rounding of such fraction to the nearest whole dollar (up or down), with half dollars being rounded down and (b) the Disbursing Agent shall have no duty to make a Distribution on account of any Allowed Claim (i) if the aggregate amount of all Distributions authorized to be made on such date is less than $5,000, in which case such Distributions shall be deferred to the next Distribution date or (ii) if the amount to be distributed to that Holder on the particular Distribution date is less than $50.00.  The limitations posed in subparagraphs (b)(i) and (ii) of this paragraph shall not apply if such Distribution constitutes the final Distribution.

8.    **No Distribution in Excess of Allowed Amount of Claim**

Notwithstanding anything to the contrary herein, no Holder of an Allowed Claim shall receive in respect of such Claim any Distributions, which individually or in the aggregate, exceed of the Allowed amount of such Claim.

9.    **Setoffs**

The Debtor may, but shall not be required to, set-off against, or recoup from, any Claim, including Administrative Claims, (for purposes of determining the Allowed amount of such Claim on which a distribution shall be made), any claims or Causes of Action of any nature whatsoever that the Debtor may have against the Holder of such Claim, but neither the failure to do so nor the allowance of any Claim under the Plan shall constitute a waiver or release by the Debtor of any such claim the Debtor may have against the Holder of such Claim.

10.    **Compliance with Tax Requirements**

In connection with the Plan and all Distributions hereunder, to the extent applicable, the Debtor is authorized to take any and all actions that may be necessary or appropriate to comply with all tax withholding and reporting requirements imposed by any federal, state, local or foreign taxing authority, and all Distributions pursuant to the Plan shall be subject to any such withholding and reporting requirements. The Debtor shall be authorized to require each Creditor to provide it with an executed Form W-9 or similar tax form as a condition precedent to being sent a Distribution. If a Holder of an Allowed Unsecured Claim does not provide the Debtor with an executed Form W-9 or similar form within 90 days of written request, said Creditor shall be deemed to have forfeited their Distribution.

11.    **Release of Liens**

Except as otherwise provided by Article III of the Plan or in any contract, instrument, release or other agreement or document created or assumed in connection with the Plan, on the Effective Date and concurrently with the applicable Distributions made pursuant to Article VII of the Plan**,** all mortgages, deeds of trust, liens, pledges or other security interests against the property of the Debtor's Estate, including the Property, shall be fully released and discharged, and all of the right, title and interest of any Holder of such mortgages, deeds of trust, liens, pledges or other security interests shall revert to the Estate.


H.    **Procedures for Resolving Disputed Claims**

1.    **Prosecution of Objections to Claims on and after the Effective Date**

Subject to Article VIII.G of the Plan, on and after the Effective Date, objections to, and requests for estimation of any Claims may be interposed and prosecuted only by the Debtor. Such objections and requests for estimation shall be served on the respective claimant and filed with the Bankruptcy Court on or before the later of (a) one hundred twenty (120) days after the Claims Bar Date and (b) such other date as may be fixed by the Bankruptcy Court upon a motion filed by the Debtor.

2.    **Estimation of Claims**

The Debtor may, at any time, request that the Bankruptcy Court estimate any contingent or unliquidated Claim pursuant to section 502(c) of the Bankruptcy Code regardless of whether the Debtor previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection. The Bankruptcy Court shall retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including during the pendency of any appeal relating to any such objection. In the event that the Bankruptcy Court estimates any contingent or unliquidated Claim, such estimated amount will constitute either the Allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court. If the estimated amount constitutes a maximum limitation on such Claim, the Debtor may elect to pursue any supplemental proceedings to object to any ultimate allowance of such Claim. All of the aforementioned Claims objection, estimation and resolution procedures are cumulative and not exclusive of one another. Claims may be estimated and subsequently compromised, settled, withdrawn or resolved by any mechanism approved by the Bankruptcy Court.

### 3.    No Distributions Pending Allowance

Notwithstanding any other provision hereof, if any portion of a Claim is a disputed Claim, no payment or distribution provided hereunder shall be made on account of such Claim unless and until such disputed Claim becomes Allowed. To the extent that all or a portion of a disputed Claim is disallowed, the Holder of such Claim shall not receive any Distribution on account of the portion of such Claim that is disallowed and any property withheld pending the resolution of such Claim shall be reallocated pro rata to the Holders of Allowed Claims in the same Class.

### 4.    Distributions After Allowance

To the extent that a disputed Claim becomes an Allowed Claim, Distributions (if any) shall be made to the Holder of such Allowed Claim in accordance with the provisions of the Plan. As soon as practicable after the date that the order or judgment of the Bankruptcy Court allowing any disputed Claim becomes a Final Order, the Debtor shall provide to the Holder of such Claim the Distribution (if any) to which such Holder is entitled under the Plan.

### 5.    Preservation of Rights to Settle

In accordance with section 1123(b) of the Bankruptcy Code, the Debtor shall retain and may enforce, sue on, settle, or compromise (or decline to do any of the foregoing) all claims, rights, Causes of Action, suits, and proceedings, whether in law or in equity, whether known or unknown, that the Debtor or its Estate may hold against any person or entity without the approval of the Bankruptcy Court (subject to the provisions of the Plan, the Confirmation Order, and any contract, instrument, release, indenture, or other agreement entered into in connection with the Plan). The Debtor or its successor(s) may pursue such retained claims, rights, Causes of action, suits, or proceedings, as appropriate, in accordance with the best interests of the Debtor or its successor(s) who hold such rights.

### 6.    Disallowed Claims

Any Claim held by a Person or Entity against whom any Debtor or its successor(s) has commenced a proceeding asserting a Cause of Action under section 542, 543, 544, 545, 547, 548, 549, and/or 550 of the Bankruptcy Code, shall be deemed a Disallowed Claim pursuant to section 502(d) of the Bankruptcy Code and the Holder of such Claim shall not be entitled to vote to accept or reject the Plan. Claims that are deemed Disallowed Claims pursuant to Article VIII.F if the Plan, shall continue to be Disallowed Claims for all purposes until such Cause of Action has been settled or resolved by Final Order and any sums due to the Debtor from such party have been paid.

### 7.    Secured Claims in Classes 3, 4, 5, 6 and 7

Any Creditor may file an objection to and/or complaint to determine the validity, priority and extent of the Secured Claims of the Holders in Classes 3, 4, 5, 6 and 7.  Any such action shall be filed no later than the sixtieth (60th) day following the Effective Date.  To the extent any such action has been filed and is pending as of the Effective Date, there shall be no need to file any such action anew, and such action may be prosecuted to its conclusion without further leave of Court. The filing of any such action shall render the Claim which is the subject thereof a disputed Claim and such Claim shall be paid only upon its becoming an Allowed Claim pursuant to the provisions of this Plan.

27

## I.      Conditions Precedent to Confirmation and Effective Date of the Plan

### 1.      Condition Precedent to Confirmation

The Plan shall not be deemed confirmed, and the Confirmation Date shall not be deemed to occur, unless and until the Confirmation Order, in form and substance satisfactory to the Proponent, has been entered on the docket maintained by the Clerk of the Bankruptcy Court.

### 2.      Conditions Precedent to the Effective Date

The Effective Date shall not occur and the Plan shall not become effective unless and until the following conditions have been satisfied in full:

a.      the Confirmation Order, in form and substance satisfactory to the Proponent, shall be entered by the Bankruptcy Court, shall become a Final Order, shall be in full force and effect and shall not be subject to a stay or an injunction which would prohibit the transactions under the Plan;

b.      the Confirmation Order shall, among other things, provide that all transfers of property by the Debtor under the Plan (a) (i) are or shall be legal, valid, and effective transfers of property, (ii) vest or shall vest the transferee with good title to such property free and clear of all liens, charges, claims, encumbrances or interests, except as expressly provided in the Plan or Confirmation Order or those voluntarily assumed or permitted by the transferee, (iii) do not and shall not constitute voidable transfers under the Bankruptcy Code or under applicable non-bankruptcy law, (iv) shall be exempt from any transfer, sales, stamp or other similar tax  and (v) do not and shall not subject the transferee or Holders of Claims to any liability by reason of such transfer under the Bankruptcy Code or under applicable non-bankruptcy law, including, without limitation, any laws with respect to successor or transferee liability and (b) to Holders of Claims under the Plan are for good consideration and value;

c.      the final version of the Plan and all of the documents and exhibits contained and referenced herein shall have been Filed and in a form and substance satisfactory to the Proponent;

d.      all actions and transfers and all agreements, instruments, or other documents necessary to implement the terms and provisions of the Plan, shall have been effected or executed and delivered, as applicable, in form and substance satisfactory to the Proponent; and

e.      all authorizations, consents, and regulatory approvals, if any, required by the Proponent in connection with the consummation of the Plan shall have been obtained and not revoked; and

f.      the Sale of the Property shall have closed.

### 3.      Waiver of Conditions

Any of the conditions to Confirmation of the Plan and/or to the Effective Date set forth in Articles VIII.A. and VIII.B. of the Plan, other than entry of the Confirmation Order in form and substance satisfactory to the Proponent, may be waived with the express written consent of the Proponent without leave or order of the Bankruptcy Court, and without any formal action.

28

#### 4. Satisfaction of Conditions

Any actions required to be taken on the Effective Date shall take place and shall be deemed to have occurred simultaneously, and no such action shall be deemed to have occurred prior to the taking of any other such action. If the Proponent determines that one of the conditions precedent set forth in Articles IX.A. and IX.B. of the Plan cannot be satisfied and the occurrence of such condition is not waived or cannot be waived, then the Proponent shall file a notice of the failure of the Effective Date with the Bankruptcy Court.

#### 5. Effect of Nonoccurrence of Conditions

If each of the conditions to occurrence of the Effective Date set forth in Article IX.B of the Plan has not been satisfied or duly waived on or before the first Business Day that is 180 days after the Confirmation Date, or such later date as shall be determined by the Debtor, the Confirmation Order may be vacated by the Bankruptcy Court. If the Confirmation Order is so vacated, the Plan shall be null and void in all respects, and nothing contained in the Plan shall constitute a waiver or release of any Claims or Equity Interests against the Debtor or release of any claims or interests by the Debtor or the Estate.

### J. Settlement, Release, Injunction and Related Provisions

#### 1. Compromise and Settlement of Claims, Equity Interests and Controversies

Pursuant to section 1123 of the Bankruptcy Code and Bankruptcy Rule 9019 and in consideration for the classification, distributions, releases, and other benefits provided pursuant to the Plan, on the Effective Date, the provisions of the Plan shall constitute a good faith compromise and settlement of all Claims, Equity Interests, and controversies resolved pursuant to the Plan or relating to the contractual, legal, and subordination rights that a Holder of a Claim or Equity Interest may have with respect to any Claim or Equity Interest, or any distribution to be made on account of such Claim or Equity Interest. The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise or settlement of all such Claims, Equity Interests, and controversies, as well as a finding by the Bankruptcy Court that such compromise or settlement is in the best interests of the Debtor, its Estate, and Holders of Claims and Equity Interests and is fair, equitable, and reasonable. After the Effective Date, and without any further notice to or action, order, or approval of the Bankruptcy Court, the Debtor may compromise and settle Claims against the Debtor and those of its Estate against other Entities.

#### 2. Preservation of Causes of Action

In accordance with section 1123(b) of the Bankruptcy Code, and except where such Causes of Action have been expressly released, including through a prior Order of the Bankruptcy Court, the Debtor shall retain and may enforce all rights to commence and pursue, as appropriate, any and all Causes of Action, whether arising before or after the Petition Date, and the Debtor's rights to commence, prosecute, or settle such Causes of Action shall be preserved notwithstanding the occurrence of the Effective Date. The Debtor may pursue such Causes of Action, as appropriate, in accordance with the best interests of the Debtor's estate. No Entity may rely on the absence of a specific reference in the Plan or the Disclosure Statement to any Cause of Action against them as any indication that the Debtor will not pursue any and all

available Causes of Action against them. Except with respect to Causes of Action as to which the Debtor, with approval of the Bankruptcy Court, has released any Entity on or prior to the Effective Date, the Debtor expressly reserves all rights to prosecute any and all Causes of Action against any Entity, except as otherwise expressly provided in the Plan. Unless any Causes of Action against an Entity is expressly waived, relinquished, exculpated, released, compromised, or settled in the Plan or a Bankruptcy Court order, the Debtor expressly reserves all Causes of Action, for later adjudication, and, therefore, no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppels (judicial, equitable or otherwise), or laches, shall apply to such Causes of Action upon, after, or as a consequence of the Confirmation or Consummation.  For the avoidance of doubt, the Debtor's potential Causes of Action against SM Global Group LLC and Piekarsky & Associates, LLC are specifically preserved.

### 3.    Indemnification Obligations

Any obligations of the Debtor pursuant to its constituent documents, operating agreements, bylaws or other agreements, including amendments, entered into any time prior to the Effective Date, to indemnify, reimburse, or limit the liability of any Covered Persons pursuant to the Debtor's certificates of incorporation or equivalent, bylaws, policy of providing employee indemnification, applicable state law, or specific agreement in respect of any claims, demands, suits, causes of action, or proceedings against such Covered Persons based upon any act or omission related to such Covered Persons' service with, for, or on behalf of the Debtor prior to the Effective Date with respect to all present and future actions, suits, and proceedings relating to the Debtor shall continue as obligations of the Debtor, and shall, in any event, survive confirmation of the Plan and except as set forth herein, remain unaffected thereby, and shall not be discharged, irrespective of whether such defense, indemnification, reimbursement, or limitation of liability accrued or is owed in connection with an occurrence before or after the Petition Date, provided, however, that all monetary obligations under Article X.C of the Plan shall be limited solely to available insurance coverage and neither the Debtor, its estate nor any of their assets shall be liable for any such obligations. Any Claim based on the Debtor's obligations set forth in Article X of the Plan shall not be a disputed Claim or subject to any objection in either case by reason of section 502(e)(1)(B) of the Bankruptcy Code. This provision for Indemnification Obligations shall not apply to or cover any Claims, suits or actions against a Covered Person that result in a final order determining that such Covered Person is liable for fraud, willful misconduct, gross negligence, bad faith, self-dealing or breach of the duty of loyalty.

### 4.    Releases

#### a.    Releases by the Debtor

For good and valuable consideration, the adequacy of which is hereby confirmed, upon the Effective Date, the Debtor, and its Estate will be deemed to forever release, waive, and discharge all claims, obligations, suits, judgments, damages, demands, debts, rights, causes of action, and liabilities whether direct or derivative, liquidated or unliquidated, fixed or contingent, matured or unmatured, disputed or undisputed, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity, or otherwise that are based in whole or in part on any act, omission, transaction, event, or other occurrence taking place on or prior to the Effective Date in any way relating to the Debtor, the Bankruptcy Case, the Plan, or the Disclosure Statement, that could have been asserted at any time, past, present, or future, by or on behalf of

the Debtor, or its Estate, against (a) BSSB, its officers, directors, successors and assigns, and each of their respective retained Professionals, in connection with or arising out of BSSB's relationship with the Debtor, (b) each director, officer or employee employed by or serving the Debtor on and after the Petition Date, in its capacity as such, and (c) each financial advisor, restructuring advisor or attorney of the Debtor, in its capacity as such employed by or serving on and after the Petition Date; provided, however, that the foregoing shall not affect the liability or release of any Person that otherwise would result from any such act or omission to the extent such act or omission is determined by a Final Order to have constituted fraud, willful misconduct, gross negligence, bad faith, self-dealing or breach of the duty of loyalty; and shall not be a waiver of any defense, offset or objection to any Claim filed against the Debtor and its Estate by any Person.

      b.     Releases among the Releasing Parties.

      EXCEPT AS OTHERWISE PROVIDED IN THIS PLAN, ON THE EFFECTIVE DATE, IN CONSIDERATION FOR THE GOOD AND VALUABLE CONSIDERATION PROVIDED BY THE RELEASING PARTIES, THE ADEQUACY OF WHICH IS HEREBY CONFIRMED, THE RELEASING PARTIES, TO THE MAXIMUM EXTENT PERMISSIBLE UNDER APPLICABLE LAW, DISCHARGE AND RELEASE AND SHALL BE DEEMED TO HAVE PROVIDED A FULL DISCHARGE AND RELEASE TO EACH OF THE OTHER RELEASING PARTIES (AND EACH OF THE OTHER RELEASING PARTIES SHALL BE DEEMED FULLY RELEASED AND DISCHARGED BY THE RELEASING PARTIES) AND THEIR RESPECTIVE PROPERTY FROM ANY AND ALL CLAIMS, INTERESTS, OBLIGATIONS, DEBTS, RIGHTS, SUITS, DAMAGES, REMEDIES, CAUSES OF ACTION, LIABILITIES WHETHER KNOWN OR UNKNOWN, FORESEEN OR UNFORESEEN, LIQUIDATED OR UNLIQUIDATED, CONTINGENT OR NON-CONTINGENT, EXISTING AS OF THE EFFECTIVE DATE IN LAW, EQUITY OR OTHERWISE, WHETHER FOR TORT, CONTRACT, VIOLATIONS OF FEDERAL OR STATE SECURITIES LAWS, OR OTHERWISE, ARISING FROM OR RELATED IN ANY WAY TO THE DEBTOR, THE TRANSACTIONS CONTEMPLATED BY THE PLAN, THE BANKRUPTCY CASE, THE PURCHASE, SALE OR RESCISSION OF ANY SECURITY OF THE DEBTOR, THE SUBJECT MATTER OF, OR THE TRANSACTIONS OR EVENTS GIVING RISE TO, ANY CLAIM OR EQUITY INTEREST THAT IS TREATED IN THE PLAN, THE BUSINESS OR CONTRACTUAL ARRANGEMENTS BETWEEN THE DEBTOR AND ANY OF THE OTHER RELEASING PARTIES, THE RESTRUCTURING OF CLAIMS AND EQUITY INTERESTS PRIOR TO OR IN THE BANKRUPTCY CASE, THE NEGOTIATION, FORMULATION, OR PREPARATION OF THE PLAN, THE DISCLOSURE STATEMENT, OR RELATED AGREEMENTS, INSTRUMENTS, OR OTHER DOCUMENTS RELATED TO THE BANKRUPTCY CASE, OR ANY OTHER ACT OR OMISSION, TRANSACTION, AGREEMENT, EVENT, OR OTHER OCCURRENCE TAKING PLACE ON OR BEFORE THE EFFECTIVE DATE, INCLUDING THOSE THAT ANY OF THE RELEASING PARTIES WOULD HAVE BEEN LEGALLY ENTITLED TO ASSERT IN THEIR OWN RIGHT (WHETHER INDIVIDUALLY OR COLLECTIVELY) OR THAT ANY HOLDER OF A CLAIM OR AN EQUITY INTEREST OR OTHER ENTITY WOULD HAVE BEEN LEGALLY ENTITLED TO ASSERT ON BEHALF OF ANY OF THE RELEASING PARTIES; PROVIDED, HOWEVER, THE FOREGOING SHALL NOT AFFECT THE LIABILITY OF ANY PERSON THAT OTHERWISE WOULD RESULT FROM ANY SUCH ACT OR OMISSION TO THE EXTENT SUCH ACT OR OMISSION IS DETERMINED BY A FINAL

31

ORDER TO HAVE CONSTITUTED FRAUD, WILLFUL MISCONDUCT, GROSS NEGLIGENCE, BAD FAITH, SELF-DEALING OR BREACH OF DUTY OF LOYALTY; <u>PROVIDED FURTHER, HOWEVER,</u> THAT THE FOREGOING SHALL NOT RELEASE ANY PRESERVED CLAIMS (WHICH FOR THE AVOIDANCE OF DOUBT INCLUDES, AMONG OTHER THINGS, AVOIDANCE ACTIONS NOT RELEASED UNDER THE PLAN) AND SHALL NOT BE A WAIVER OF ANY DEFENSE, OFFSET OR OBJECTION TO ANY CLAIM FILEDAGAINST THE DEBTOR AND ITS ESTATE BY ANY PERSON. For clarity, nothing in this Release shall release, waive or discharge any Person of any Cause of Action under Chapter 5 of the Bankruptcy Code or any state law cause of action relating to transfers, fraudulent transfers or pre-petition management of the Debtor.

      **5.**        **Exculpation**

      The Exculpated Parties shall neither have, nor incur, any liability to any Entity for any act taken or omitted to be taken in connection with, relating to, or arising out of, the Bankruptcy Case, formulating, negotiating, soliciting, preparing, disseminating, implementing, confirming, or effecting the Consummation of the Plan, the Disclosure Statement, the administration of the Plan or the property to be distributed under the Plan or related to the issuance, distribution, and/or sale of any security, or any contract, instrument, release, or other agreement or document created or entered into in connection with the Plan or any other post-petition act taken or omitted to be taken in connection with or in contemplation of the restructuring or liquidation of the Debtor and/or related to this Bankruptcy Case; <u>provided, however,</u> that the foregoing shall not affect the liability of any Person that otherwise would result from any such act or omission to the extent such act or omission is determined by a Final Order to have constituted fraud, willful misconduct, gross negligence, bad faith, self-dealing or breach of duty of loyalty.


**VII.**

**CERTAIN FACTORS TO BE CONSIDERED**

      **ALL HOLDERS OF IMPAIRED CLAIMS AND EQUITY INTERESTS SHOULD READ AND CAREFULLY CONSIDER THE FACTORS SET FORTH BELOW AS WELL AS THE OTHER INFORMATION SET FORTH OR OTHERWISE REFERENCED IN THIS DISCLOSURE STATEMENT PRIOR TO VOTING TO ACCEPT OR REJECT THE PLAN.**

**A.**      **Financial Information; Disclaimer**

      Although the Debtor has used its best efforts to ensure the accuracy of the financial information provided in this Disclosure Statement, the financial information contained in this Disclosure Statement has not been audited and is based upon an analysis of data available to the Debtor at the time of the preparation of the Plan and Disclosure Statement. While the Debtor expects that such financial information fairly reflects the financial condition of the Debtor, the Debtor is unable to warrant or represent that the information contained herein and attached hereto is without inaccuracies.

32

### B.  Failure to Confirm Plan

Even if the impaired Classes accept or could be deemed to have accepted the Plan, the Plan may not be confirmed by the Bankruptcy Court. Section 1129 of the Bankruptcy Code sets forth the requirements for confirmation and requires, among other things, (1) that the confirmation of the Plan not be followed by liquidation or a need for further financial reorganization, unless, as is the case here, the Plan provides for such liquidation or reorganization, (2) that the value of distributions to dissenting holders not be less than the value of distributions to such holders if the Debtor was liquidated under chapter 7 of the Bankruptcy Code, and (3) that the Plan and the Debtor, as Proponent of the Plan, otherwise comply with the applicable provisions of the Bankruptcy Code. Although the Debtor believes that the Plan will meet all applicable tests, there can be no assurance that the Bankruptcy Court will reach the same conclusion.

### C.  Nonconsensual Confirmation

Pursuant to the "cramdown" provisions of section 1129(b) of the Bankruptcy Code, the Bankruptcy Court can confirm the Plan notwithstanding the nonacceptance of the Plan by an Impaired Class of Claims or Equity Interests if at least one other Impaired Class has accepted the Plan (with such acceptance being determined without including the acceptance of any insider (as defined in section 101(31) of the Bankruptcy Code) in such Class) and, as to each Impaired Class which has not accepted the Plan, the Bankruptcy Court determines that the Plan "does not discriminate unfairly" and is "fair and equitable" with respect to such Impaired Classes. In accordance with section 1129(a)(8) of the Bankruptcy Code, the Debtor intends to request confirmation of the Plan in accordance with section 1129(b) of the Bankruptcy Code.

Although the Debtor believes that the Plan satisfies the requirements of section 1129(b), there is no guaranty that the Bankruptcy Court will reach that conclusion. Moreover, although the Debtor encourages all Creditors in an Impaired Class to vote in favor of the Plan and the Debtor believes that they are likely to have at least one Impaired Class vote in favor of the Plan, there is no guaranty that this will occur. If no Impaired Class votes in favor of the Plan, the Plan cannot be confirmed as written.

### D.  Delays of Confirmation or Effective Date

Any delays of either confirmation or effectiveness of the Plan could result in, among other things, increased administrative costs, including professional fee claims. These negative effects of delays of either confirmation or effectiveness of the Plan could endanger the ultimate approval of the Plan by the Bankruptcy Court.

### E.  Certain Bankruptcy Considerations

Although the Debtor believes that the Plan will satisfy all requirements necessary for confirmation by the Bankruptcy Court, there can be no assurance that the Bankruptcy Court will reach the same conclusion. Moreover, there can be no assurance that modifications of the Plan will not be required for confirmation or that such modifications would not necessitate the resolicitation of votes. In addition, although the Debtor believes that the Effective Date will occur during the fourth calendar quarter of 2013, there can be no assurance as to such timing.

### F.  Certain Tax Considerations

There are a number of material United States federal income tax considerations, risks and uncertainties associated with consummation of the Plan. Interested parties should consult with

their tax advisors regarding United States federal income tax consequences and risks for Holders of Claims resulting from the transactions occurring in connection with the Plan.

## G.    The Debtor Has No Duty to Update

The statements contained in this Disclosure Statement are made by the Debtor as of the date hereof, unless otherwise specified herein, and the delivery of this Disclosure Statement after that date does not imply that there has been no change in the information set forth herein since that date. The Debtor has no duty to update this Disclosure Statement unless otherwise ordered to do so by the Bankruptcy Court.

## H.    No Representations Outside This Disclosure Statement Are Authorized

No representations concerning or related to the Debtor, the chapter 11 case, or the Plan are authorized by the Bankruptcy Court or the Bankruptcy Code, other than as set forth in this Disclosure Statement. Any representations or inducements made to secure your acceptance or rejection of the Plan that are other than as contained in, or included with, this Disclosure Statement should not be relied upon by you in arriving at your decision.

## I.    Claims Could Be More Than Projected, Assets Could Be Less Than Projected

The Allowed amount of Claims in each Class could be greater than projected, which in turn, could cause the amount of distributions to creditors to be reduced substantially. Likewise, the amount of cash realized for the liquidation of the Debtor's assets could be less than projected, which could cause the amount of distributions to creditors to be reduced substantially.

## J.    No Legal Or Tax Advice Is Provided To You By This Disclosure Statement

The contents of this Disclosure Statement should not be construed as legal, business, or tax advice. Each Claim or Equity Interest Holder should consult his, her, or its own legal counsel and accountant as to legal, tax, and other matters concerning his, her, or its Claim or Equity Interest.

This Disclosure Statement is not legal advice to you. This Disclosure Statement may not be relied upon for any purpose other than to determine how to vote on the Plan or object to confirmation of the Plan.

## VIII.

## PROCESS OF VOTING AND CONFIRMATION

The following is a brief summary regarding the requirements for confirmation of the Plan. Holders of Claims and Holders of Equity Interests are encouraged to review the relevant provisions of the Bankruptcy Code or to consult their own attorneys.

## A.    Statutory Requirements for Confirmation of the Plan

At the Confirmation Hearing, the Bankruptcy Court shall determine whether the requirements of section 1129 of the Bankruptcy Code have been satisfied. If so, the Bankruptcy

Court shall enter the Confirmation Order. The Debtor believes that the Plan satisfies or will satisfy the applicable requirements, as follows:

- The Plan complies with the applicable provisions of the Bankruptcy Code.
- The Debtor has complied with the applicable provisions of the Bankruptcy Code.
- The Plan has been proposed in good faith and not by any means forbidden by law.

- Any payment made or to be made under the Plan for services or for costs and expenses in or in connection with the Debtor's chapter 11 case has been disclosed to the Bankruptcy Court and any such payment made before the confirmation of the Plan is reasonable or if such payment is to be fixed after the confirmation of the Plan, such payment is subject to the approval of the Bankruptcy Court.

- With respect to each Class of Impaired Claims, either each Holder of a Claim in such Class had accepted the Plan or each such Holder will receive or retain under the Plan on account of such Claim property of a value as of the Effective Date of the Plan that is not less than the amount that such Holder would receive or retain if the Debtor was liquidated on such date under chapter 7 of the Bankruptcy Code.
- Each Class of Claims that is entitled to vote on the Plan has either accepted the Plan or is not impaired under the Plan.
- Except to the extent that the Holder of a particular Claim agrees to a different treatment of such Claim, the Plan provides that Allowed Administrative Claims, Allowed Priority Tax Claims, Allowed Non-Tax Priority Claims and Allowed Secured Claims will be paid in full on the Effective Date or as soon thereafter as practicable.
- At least one Class of Impaired Claims (not including any acceptance of the Plan by any Insider (as defined in section 101(31) of the Bankruptcy Code) holding a Claim in such Class) has accepted the Plan.
- Confirmation of the Plan is not likely to be followed by the liquidation or the need for further financial reorganization of the Debtor or any successor to the Debtor under the Plan, unless such liquidation or reorganization is proposed in the Plan.
- All fees of the type described in 28 U.S.C. § 1930, including the fees of the United States Trustee, will be paid as of the Effective Date.

The Debtor believes that (1) the Plan satisfies or will satisfy all of the statutory requirements of chapter 11 of the Bankruptcy Code; (2) it has complied or will have complied with all of the requirements of chapter 11 of the Bankruptcy Code; and (3) the Plan has been proposed in good faith.

**B.      Best Interests of Creditors Test**

Before the Plan may be confirmed, the Bankruptcy Court must find (with certain exceptions) that the Plan provides, with respect to each Class, that each Holder of a Claim in such Class either (a) has accepted the Plan or (b) will receive or retain under the Plan property of a value, as of the Effective Date, that is not less than the amount that such Holder would receive or retain if the Debtor liquidated under chapter 7 of the Bankruptcy Code.

In chapter 7 liquidation cases, unsecured creditors and equity interest holders of a debtor are paid from available assets generally in the following order, with no lower class receiving any payments until all amounts due to senior classes have been paid fully or payment has been provided for:

- Secured creditors (to the extent of the value of their collateral).
- Priority creditors.
- Unsecured creditors.
- Debt expressly subordinated by its terms or by order of the Bankruptcy Court.
- Equity interest holders.

Even though the Debtor may operate for a limited time after the Effective Date, this is a liquidating plan. The Debtor has prepared a liquidation analysis, which is attached hereto **Exhibit B**. In any event, whether by the Debtor, or a chapter 7 trustee, the Debtor's Estate's assets will be liquidated. Accordingly, there is no reorganization value to be calculated, and distribution scenarios related thereto. In addition, the activities of the Debtor after the Effective Date are the very same ones that would be pursued by a chapter 7 trustee. However, unlike a chapter 7 trustee, who may seek to charge statutory fees of up to 3% of disbursements, the Debtor will not receive any such commissions. Additionally, it is likely that a chapter 7 trustee will retain counsel who would likely be required to spend a significant amount of time and expense becoming familiar with the case – time and expense that would not be required if the Plan is confirmed.

After careful review of the estimated recoveries in a chapter 11 liquidation scenario and a chapter 7 liquidation scenario, the Debtor has concluded that the recoveries to Creditors will be maximized by completing the liquidation of any remaining assets of the Debtor under chapter 11 of the Bankruptcy Code and making distributions pursuant to the Plan. The Debtor believes that the Debtor's Estate has value that would not be fully realized by Creditors in a chapter 7 liquidation primarily because, among other reasons, (i) additional administrative expenses would be incurred in a chapter 7 liquidation, specifically those of a chapter 7 trustee charging statutory fees of up to 3% of disbursements and any costs of counsel to the chapter 7 trustee to become familiar with the facts and circumstances of this case; (ii) a sale of the Property in a chapter 7 liquidation will not be exempt from transfer taxes pursuant to 11 U.S.C. § 1146; and (iii) the additional delay in distributions that would occur if the Debtor's chapter 11 case were converted to a case under chapter 7.

## C.    Plan Feasibility

Section 1129(a)(11) of the Bankruptcy Code requires that confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtor or any successors to the Debtor under the Plan, unless such liquidation or reorganization is proposed in the Plan. The Plan provides for a liquidation of the Debtor's remaining assets and a distribution of the Cash proceeds to creditors in accordance with the priority scheme of the Bankruptcy Code and the terms of the Plan and Liquidating Trust Agreement. The Debtor will not be conducting any business operations after the Effective Date.

The ability to make distributions described in the Plan therefore does not depend on future earnings or operations of the Debtor, but only on the orderly liquidation of the Debtor's remaining assets. Accordingly, the Debtor believes that the Plan is feasible and meets the requirements of section 1129(a)(11) of the Bankruptcy Code.

## D.    Section 1129(b): Unfair Discrimination and the "Fair and Equitable" Test

The Debtor will request Confirmation of the Plan under section 1129(b) of the Bankruptcy Code, and has reserved the right to modify the Plan to the extent, if any, that Confirmation pursuant to section 1129(b) of the Bankruptcy Code requires modification. The

Bankruptcy Court may confirm the Plan over the rejection or deemed rejection of the Plan by an Impaired Class of Claims or Equity Interests if the Plan "does not discriminate unfairly" and is "fair and equitable" with respect to such Class.

### 1.     No Unfair Discrimination

The "unfair discrimination" test applies to Impaired Classes of Claims or Equity Interests that are of equal priority and are receiving disparate treatment under the Plan. The test does not require that the treatment of such Classes be the same or equivalent, but only that the treatment be "fair." The Plan does not classify separately Claims against the Debtor, into two or more Impaired Classes of equal priority. Accordingly, there is no basis for any Claimant to assert that the Plan unfairly discriminates. Accordingly, the Plan does not discriminate (let alone unfairly) and satisfies the "unfair discrimination" test. Simply put, all Claims of equal rank are classified in the same Class and are treated equally.

### 2.     Fair and Equitable Test: "Cramdown"

The Bankruptcy Code provides a non-exclusive definition of the phrase "fair and equitable." The Bankruptcy Code establishes "cramdown" tests for dissenting classes of secured creditors, unsecured creditors and equity holders. As to each dissenting class, the test prescribes different standards, depending on the type of claims or equity interests in such class:

*Secured Creditors.* With respect to each class of secured claims that rejects the plan, the plan must provide (i)(a) that each holder of a Secured Claim in the rejecting class retain the liens securing those claims, whether the property subject to those liens is retained by the debtor or transferred to another entity, to the extent of the allowed amount of such secured claim and (b) that the Secured Creditor receives on account of its secured claim deferred cash payments having a value, as of the effective date of the plan, of at least the value of the allowed amount of such secured claim; (ii) for the sale, subject to section 363(k) of the Bankruptcy Code, of any property that is subject to the liens securing the claims included in the rejecting class, free and clear of such liens, with such liens to attach to the proceeds of the sale, and the treatment of such liens on proceeds under clause (i) or (iii) of this subparagraph; or (iii) for the realization by the Secured Creditor of the "indubitable equivalent" of its Secured Claim.

*Unsecured Creditors.* With respect to each Impaired Class of unsecured Claims that rejects the plan, the plan must provide (A) that each holder of a claim in the rejecting class will receive or retain on account of that claim property that has a value, as of the effective date of the plan, equal to the allowed amount of such claim; or (B) that no holder of a claim or interest that is junior to the claims of such rejecting class will receive or retain under the Plan any property on account of such junior claim or interest.

*Equity Interests.* With respect to each Impaired Class of equity interests that rejects the plan, the plan must provide (I) that each holder of an equity interest included in the rejecting class receive or retain on account of that equity interest property that has a value, as of the effective date of the plan, equal to the greatest of the allowed amount of any fixed liquidation preference to which such holder is entitled, any fixed redemption price to which such holder is entitled, or the value of such equity interest; or (II) that no holder of an equity interest that is junior to the equity interests of such rejecting class will receive or retain under the plan any property on account of such junior interest.

The Debtor believes that the Plan may be confirmed pursuant to the above-described "cramdown" provisions, over the dissent of certain Classes of Claims and Equity Interests, in

view of the treatment proposed for such Classes. The Debtor believes that the treatment under the Plan of the Holders of Classes 2 through 8 Claims and Class 9 Interests will satisfy the "fair and equitable" test. Additionally, as noted above, the Debtor does not believe that the Plan unfairly discriminates against any dissenting Class because all dissenting Classes of equal rank are treated equally under the Plan.

## IX.

## ALTERNATIVES TO CONFIRMATION AND CONSUMMATION OF THE PLAN

### A.     Liquidation Under Chapter 7

If no chapter 11 plan can be confirmed, the Debtor's chapter 11 case may be converted to a case under chapter 7 of the Bankruptcy Code to liquidate the assets of the Debtor for distribution in accordance with the priorities established by the Bankruptcy Code. It is impossible to predict precisely how the proceeds of the liquidation would be distributed to the respective Holders of Claims against or Equity Interests in the Debtor.  However, the Debtor believes that liquidation under chapter 7 would result in lower distributions being made to creditors than those provided for in the Plan because, among other reasons, (1) additional administrative expenses would be incurred in a chapter 7 liquidation, specifically those of a chapter 7 trustee charging statutory fees of up to 3% of disbursements and any costs of counsel to the chapter 7 trustee to become familiar with the facts and circumstances of this case; (2) the sale of the Property in chapter 7 would not be exempt from all transfer taxes as it would in chapter 11; and (3) the additional delay in distributions that would occur if the Debtor's chapter 11 case were converted to a case under chapter 7.

### B.     Alternative Plan of Reorganization

The Debtor, with the assistance of its professionals, have considered its options and have concluded that the Plan offers the best and highest recoveries for Creditors. The Debtor has concluded that the Plan provides greater potential recoveries for Creditors than any feasible alternative.

## RECOMMENDATION AND CONCLUSION

In the opinion of the Debtor, the Plan is preferable to the alternatives described herein. It provides for larger distribution to the Holders than would otherwise result in a liquidation under chapter 7 of the Bankruptcy Code. In addition, any alternative other than confirmation of the Plan could result in extensive delays and increased administrative expenses resulting in smaller distributions to the Holders of Claims. **Accordingly, the Debtor recommends that Holders of Claims entitled to vote to accept or reject the Plan support confirmation of the Plan and vote to accept the Plan.**

Dated: September 6, 2013                    Respectfully submitted,

**BERGENFIELD SENIOR HOUSING, LLC**

By: _____
      Nicholas Rotonda, Managing Member