**COLE, SCHOTZ, MEISEL,**
**FORMAN & LEONARD, P.A.**
A Professional Corporation
Court Plaza North
25 Main Street
P.O. Box 800
Hackensack, New Jersey 07602-0800
(201) 489-3000
(201) 489-1536 Facsimile
Kenneth L. Baum, Esq.
Attorneys for SM Global Group, LLC

|  |  |
|---|---|
| In re:<br><br>BERGENFIELD SENIOR HOUSING, LLC,<br><br>Debtor. | UNITED STATES BANKRUPTCY COURT<br>FOR THE DISTRICT OF NEW JERSEY<br>HON. MORRIS STERN<br>CASE NO. 13-19703 (MS)<br><br>Chapter 11<br><br>**OBJECTION OF SM GLOBAL GROUP, LLC, TO THE DEBTOR'S DISCLOSURE STATEMENT FOR FIRST AMENDED PLAN OF LIQUIDATION PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE PROPOSED BY THE DEBTOR**<br><br>**Hearing Date: October 24, 2013** |

TO:   HONORABLE MORRIS STERN
      United States Bankruptcy Judge

SM Global Group, LLC ("**SM Global**"), a creditor of Bergenfield Senior Housing, LLC,

the above-captioned debtor and debtor-in-possession (the "**Debtor**"), by and through its counsel,

Cole, Schotz, Meisel, Forman & Leonard, P.A., submits this Objection to the Debtor's

Disclosure Statement for First Amended Plan of Liquidation Pursuant to Chapter 11 of the

Bankruptcy Code Proposed by the Debtor [D.N. 101] (the "**Disclosure Statement**"), and

respectfully represents as follows:

I. **PRELIMINARY STATEMENT**

1. The Disclosure Statement, which the Debtor submitted in connection with its First Amended Plan of Liquidation Pursuant to Chapter 11 of the Bankruptcy Code Proposed by the Debtor [D.N. 100] (the "**First Amended Plan**"), falls woefully short of providing creditors with information sufficient to allow them to make well-informed decisions on the First Amended Plan, pursuant to Section 1125 of the Bankruptcy Code, and supports a Plan that is patently unconfirmable.

2. First, the Disclosure Statement fails to provide critical information regarding alleged secured claims held by insiders of the Debtor, where those claims are either based on mortgages for which no value was given to the Debtor, or the underlying debt is likely subject to reclassification as equity in the Debtor.  In addition, the financial information provided in the Disclosure Statement is incomplete and deficient.  Specifically, the Debtor, whose sole substantial asset is a 90-unit residential apartment building located at 47 Legion Drive, Bergenfield, New Jersey (the "**Property**"), has offered no appraisal or other evidence regarding the value of that asset.  Moreover, the Disclosure Statement lacks any reasoning to support the Debtor's conclusion that it does not believe there are any avoidance actions worth pursuing, despite the fact that the Debtor's Statement of Financial Affairs discloses several pre-petition transfers to insiders within one year preceding the filing of this case.  For these reasons and others, the Disclosure Statement fails to meet the Debtor's burden of providing adequate information, as mandated by Section 1125 of the Bankruptcy Code.

3. Further, the First Amended Plan, as presently conceived, is fatally flawed and cannot meet the confirmation requirements under Section 1129 of the Bankruptcy Code.

Accordingly, because the First Amended Plan is patently unconfirmable, the Court should not approve the Disclosure Statement.

## II. OBJECTION

### A. The Disclosure Statement Does Not Contain The Requisite "Adequate Information" To Allow The Creditor Body To Make Informed Decisions On The Proposed Amended Plan

4. A disclosure statement may be approved only if it contains "adequate information," which is defined by the Bankruptcy Code as:

> information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records, including a discussion of … a hypothetical investor typical of the holders of claims or interests in the case, that would enable such a hypothetical investor of the relevant class to make an informed judgment about the plan ….

11 U.S.C. § 1125(a)(1).

5. The relevant factors for evaluating the adequacy of a disclosure statement include:

(1) the circumstances that gave rise to the filing of the bankruptcy petition;

(2) a complete description of the available assets and their value;

(3) the anticipated future of the debtor;

(4) the source of the information provided in the disclosure statement;

(5) a disclaimer, which typically indicates that no statements or information concerning the debtor or its assets or securities are authorized, other than those set forth in the disclosure statement;

(6) the condition and performance of the debtor while in Chapter 11;

(7) information regarding claims against the estate;

3

    (8)    a liquidation analysis setting forth the estimated return that creditors would receive under Chapter 7;

    (9)    the accounting and valuation methods used to produce the financial information in the disclosure statement;

    (10)    information regarding the future management of the debtor, including the amount of compensation to be paid to any insiders, directors, and/or officers of the debtor;

    (11)    a summary of the plan of liquidation;

    (12)    an estimate of all administrative expenses, including attorneys' fees and accountants' fees;

    (13)    the collectability of any accounts receivable;

    (14)    any financial information, valuations or *pro forma* projections that would be relevant to creditors' determinations of whether to accept or reject the plan;

    (15)    information relevant to the risks being taken by the creditors and interest holders;

    (16)    the actual or projected value that can be obtained from avoidable transfers;

    (17)    the existence, likelihood and possible success of non-bankruptcy litigation;

    (18)    the tax consequences of the plan; and

    (19)    the relationship of the debtor with affiliates.

In re Scioto Valley Mortgage Co., 88 B.R. 168, 170-171 (Bankr. S.D. Ohio 1988).

    6.    Simply put, "adequate information" means that the Disclosure Statement must clearly and succinctly inform the average unsecured creditor what it is going to get, when it is going to get it, and what contingencies there are to a distribution.  See, e.g., In re Ferretti, 128 B.R. 16, 19 (Bankr. D. N.H. 1991); In re U.S. Brass Corp., 194 B.R. 420, 424-25 (E.D. Tex. 1996).

46121/0001-9883339v4

7. For the reasons stated below, the Disclosure Statement fails to meet the Debtor's burden of providing adequate information, as mandated by Section 1125 of the Bankruptcy Code.

**(i)   The Disclosure Statement Fails to Include Critical Information Regarding the Mortgage Interests Granted to Insiders**

8. The Debtor owns and operates the Property, which is its sole substantial asset. Nicholas and Rosemarie Rotonda are the managing members and 100% equity holders of the Debtor. The Property serves as collateral for two promissory notes executed by the Debtor in favor of Boiling Springs Savings Bank ("**Boiling Springs**"), which claims to have perfected first- and second-priority mortgages on the Property.

9. The Property is further encumbered by mortgages allegedly granted to various members of the Rotonda family, including Nicholas Rotonda, Rosemarie Rotonda, Nicholas Rotonda, Jr., Gene Rotonda, and Rosemarie Hebner. In order of priority, based on the date of recordation, the mortgages on the Property are as follows:

| Mortgage Holder | Amount |
| --- | --- |
| Gene Rotonda | $1,000,000 |
| Nicholas Rotonda, Jr. | $1,000,000 |
| Rosemarie Hebner | $1,000,000 |
| Nicholas and Rosemarie Rotonda | $1,500,000 |
| Nicholas and Rosemarie Rotonda | $600,000 |

10. The Debtor acknowledges that the mortgages granted to Gene Rotonda, Nicholas Rotonda, Jr., and Rosemarie Hebner, which it classifies in Classes 3, 4, and 5 of the Amended Plan, respectively, were granted without any value provided to the Debtor in exchange.

5

(Disclosure Statement at Art. IV.A.1., p. 8.) That the Debtor claims to be in "discussions" with these insiders in an effort to have their claims voluntarily withdrawn (Disclosure Statement, p. 9), is of no comfort to the creditor body, as creditors must assume, without any assurance otherwise, that those discussions will not yield a beneficial outcome. Moreover, the Disclosure Statement provides that, in the likely event that those discussions are unsuccessful, these suspect insider claims will be paid to the extent allowed, notwithstanding that they are likely textbook fraudulent or otherwise invalid mortgage interests. (Disclosure Statement, p. 21.)

11. Because these mortgages were granted to insiders, without any consideration to the Debtor, SM Global can only conclude that the mortgages, and therefore the underlying claims, are not valid. The Disclosure Statement, therefore, must provide detailed information as to why these claims were not disputed on Schedule D of the Debtor's Chapter 11 Petition, and what steps the Debtor intends to take to disqualify these claims from voting on and/or receiving any distribution under the Amended Plan.

      **(ii)**    **The Disclosure Statement Lacks Any Financial Information Regarding the Mortgage Interests Held by Nicholas and Rosemarie Rotonda**

12. The Disclosure Statement provides that Classes 6 and 7 include secured claims held jointly by Nicholas and Rosemarie Rotonda. (Disclosure Statement, pp. 20-21.) As noted above, these claims equal $2.1 million, but the Disclosure Statement fails to provide any information regarding the details of these claims. This omission is very telling, given that Nicholas and Rosemarie Rotonda are "insiders," as that term is defined under the Bankruptcy Code. See 11 U.S.C. § 101(31)(b) (where the debtor is a corporation, the term insider includes director, officer, or person in control of the debtor, and their relatives). Assuming, *arguendo,* that Nicholas and Rosemarie Rotonda even advanced any money to the Debtor in exchange for

6

these mortgages, as managing members and owners, their alleged loans to the Debtor may be subject to recharacterization as equity contributions under the Third Circuit's ruling in In re Submicron Sys. Corp., 432 F.3d 448 (3d Cir. 2006).

13. The Debtor's cursory overview of the circumstances giving rise to the need for the loans in Article IV, Section B.2.b., is inadequate. The Disclosure Statement should include, among other information, the specific date(s) on which these loans were made, the terms of repayment (including loan maturity, interest rate, and repayment information), the portion of the loan balance that is interest versus principal, the use(s) of the loan proceeds, and any other material terms of the loan agreements. This information is necessary to provide voting creditors with assurance of the legitimacy of the Rotondas' interests as valid secured debt, and not equity contributions.

### (iii) The Disclosure Statement Lacks Adequate Information Regarding the Debtor's Potential Avoidance Actions Against Insiders

14. The Disclosure Statement sets forth that,

> The Debtor does not believe that there exist any significant Chapter 5 Causes of Action (generally in the nature of preferences or fraudulent conveyances) which, taking into account costs of litigation and likelihood of success, would be worth pursuing for the benefit of creditors.

(Disclosure Statement, pp. 14-15.)

15. The Debtor's Statement of Financial Affairs, however, lists several substantial prepetition transfers [Docket No. 54], including payments made to insiders identified as Nicholas Rotonda, Rotonda Construction, and Pruco Life Assurance. See Statement of Financial Affairs, p. 11, Ex. A.

16. The Disclosure Statement fails to provide any detail regarding the basis for these payments or any anticipated defenses to an action to avoid these transfers to insiders. As

7

disclosed in the Statement of Financial Affairs, these transfers amount to, in the aggregate, $80,000.  Specific details regarding these transfers and any potential defenses must be disclosed to creditors.  Conclusory statements by the Debtor are **not** sufficient.

> **(iv)** **The Disclosure Statement Lacks Adequate Financial Information Regarding the Value of Available Assets and an Accurate Liquidation Analysis**

17. The financial information provided in the Disclosure Statement is incomplete and deficient.  Indeed, the significant statements as to value made in the Disclosure Statement are as follows:

> The Debtor has performed a preliminary analysis of the value of the Property, and the personal property expected to be sold therewith.  This analysis assumes certain results from the sale of the Debtor's Property.
>
> The Debtor estimates that the range of value for the Property is $13.5 million to $15 million.  This valuation is for informational purposes only.  The Debtor has not yet attempted to ascertain the value of its other assets . . . ."

(Disclosure Statement, p. 14.)

18. This statement is grossly inadequate.  The Debtor should provide appraisals or other valuations of all of its assets in order to provide sufficient information for all parties to determine how they will vote on the Amended Plan.  See In re Cardinal Congregate I, 121 B.R. 760, 765 (Bankr. S.D. Ohio 1990); see also In re Copy Crafters Quickprint, Inc., 92 B.R. 973, 980 (Bankr. N.D.N.Y. 1988) (courts have denied approval of a disclosure statement where statements were "unsupported by factual information so that voting parties were unable to independently evaluate the merits of the plan").

8

### (v) The Disclosure Statement Lacks Information Regarding the Cash Assets of the Debtor and Their Proposed Disposition

19. The Disclosure Statement does not disclose whether the Debtor will be holding any cash assets on the Effective Date of the First Amended Plan and, if there are any such assets, what their proposed disposition will be. See Disclosure Statement, pp. 14-15. Accordingly, for this and the other reasons described above, the Disclosure Statement fails to include adequate information pursuant to Section 1125 of the Bankruptcy Code and should not be approved.

**B. Because The First Amended Plan Is Not Confirmable As Proposed, The Court Should Not Approve the Disclosure Statement**

20. A bankruptcy court may address the issue of plan confirmation at the disclosure statement stage where "it is obvious at the disclosure statement stage that a later confirmation hearing would be futile because the plan described by the disclosure statement is patently unconfirmable." In re Am. Capital Equip., LLC, 688 F.3d 145, 154 (3d Cir. 2012). "A plan is patently unconfirmable where (1) confirmation defects cannot be overcome by creditor voting results and (2) those defects concern matters upon which all material facts are not in dispute or have been full developed at the disclosure hearing." Id. at 154-55; See also In re 266 Washington Assocs., 141 B.R. 275, 288 (Bankr. E.D.N.Y.), aff'd 147 B.R. 827 (E.D.N.Y. 1992) (court denied approval of the disclosure statement due to "patent legal defects" in the proposed plan); see also In re Phoenix Petroleum Co., 278 B.R. 385, 394 (Bankr. E.D. Pa. 2001) ("it may … be appropriate to consider issues at the disclosure hearing stage which could otherwise be raised at confirmation, if the described plan is fatally flawed so that confirmation would not be possible"); In re Dakota Rail, Inc., 104 B.R. 138, 143 (Bankr. D. Minn. 1989) (allowing a facially nonconfirmable plan to accompany a disclosure statement is both inadequate disclosure and misrepresentation).

46121/0001-9883339v4

21. Courts have reasoned that analysis of a debtor's proposed disclosure statement <u>and</u> plan of reorganization will avoid the burden and expense associated with distribution and vote solicitation of a nonconfirmable plan. <u>See</u> <u>In re Dakota Rail, Inc.</u>, 104 B.R. at 143; <u>In re E. Maine Elec. Co-Op., Inc.</u>, 125 B.R. 329, 333 (Bankr. D. Me. 1991).

22. Section 1129(a)(1) of the Bankruptcy Code provides that, "[t]he court shall confirm a plan only if . . . [t]he plan complies with the applicable provisions of this title." For the reasons set forth below, the First Amended Plan fails to comply with, among other sections, Section 1129 of the Bankruptcy Code, and thus, cannot be confirmed. Here, the Debtor's First Amended Plan is unconfirmable for several reasons.

    **(vi)    The First Amended Plan Violates the Good Faith Requirement of Section 1129(a)(3)**

23. "As a condition of plan confirmation, a debtor must propose a plan of reorganization in good faith and not by any means forbidden by law." <u>In re Combustion Engineering, Inc.</u>, 391 F.3d 190, 246 (3d Cir. 2004). "[F]or the purposes of determining good faith under section 1129(a)(3) the important point of inquiry is the plan itself and whether such a plan will fairly achieve a result consistent with the objectives and purposes of the Bankruptcy Code." <u>Id.</u> For purposes of confirming a Chapter 11 plan, "the Court must determine whether the Plans, given the totality of the Debtors' circumstances, satisfy the purposes underlying Chapter 11 ... [namely] ... 'the preservation of businesses as going concerns, and the maximization of the assets recoverable to satisfy unsecured claims." <u>In re Chicago Investments, LLC</u>, 470 B.R. 32, 104 (Bank. D. Mass. 2012). Accordingly, "[a]n unwarranted and discriminatory treatment of insiders' claims that favors those claims over those of creditors may preclude a finding of good faith." <u>Id.</u>, 470 B.R. at 104; <u>see also</u> <u>In re Future Energy Corp.</u>, 83

B.R. 470, 487 (Bankr. S.D.Oh. 1988) (an attempt by a debtor-in-possession to give favorable treatment to an insider violates the good faith requirement of Section 1123(a)(3)).

24.     Here, because the Debtor has filed a liquidating plan, and preservation of the business as a going concern is not relevant, the Court should be primarily concerned with maximizing assets to satisfy unsecured claims.  As such, the Court should be critical of Classes 3 through 7 and the mortgage interests of the Rotonda family members included therein.

25.     As discussed above, the Debtor has expressly stated that the Debtor received no loan or value for the mortgage interests in the Property conveyed to Gene Rotonda, Nicholas Rotonda, Jr., and Rosemarie Hebner.  Shockingly, the Debtor has taken no action thus far to invalidate these claims.  Similarly, the Debtor has failed to provide any detail regarding the basis for Nicholas and Rosemarie Rotonda's secured claims – i.e., when the alleged underlying loans were made to the Debtor, and the use(s) for the funds – or whether the Debtor believes these claims, if valid, may be subject to recharacterization as equity interests.

26.     The Debtor indicates that "Such Claims and the liens securing such Claims will remain subject to investigation, challenge and objection by parties in interest as provided by Article VIII of the Plan." (Disclosure Statement, p. 21.)  This provision does not ensure fairness to creditors or satisfy the requirement for good faith; rather, it demonstrates the clear conflict the Debtor has with its insider creditors: the Debtor recognizes that the Rotonda family members' claims are objectionable, but is unwilling to take any action in regard to those claims.

27.     The proposed First Amended Plan is a classic case of favoring insiders over other creditors.  Furthermore, by failing to attempt to preserve assets for distribution to unsecured creditors, the First Amended Plan does not serve one of the primary purposes of the Bankruptcy Code.  For these reasons, the Court has grounds to find that the First Amended Plan was

proposed in bad faith and, therefore, cannot be confirmed. Accordingly, because the First Amended Plan is patently unconfirmable, the Disclosure Statement should not be approved.

WHEREFORE, SM Global respectfully requests that the Court enter an Order (i) denying approval of the Disclosure Statement, and (ii) for such other and further relief as the Court deems just and proper under the circumstances.

           Respectfully submitted,

           COLE, SCHOTZ, MEISEL, FORMAN &
           LEONARD, P.A.,
           Attorneys for SM Global Group, LLC

           By: */s/ Kenneth L. Baum*
                 Kenneth L. Baum

DATED: October 23, 2013